## DAVIS v. MELLEN et al.

No. 3334.  Decided July 11, 1919.  (182 Pac. 920.)

1. INDEPENDENT CONTRACTOR—IMPROVEMENTS OF STREETS—BARRICADES—DUTY OF CONTRACTOR. A contractor who rightfully enters upon a highway for the purpose of improving a street has a right to barricade and obstruct the public travel over the section of the street being improved. (Page 21.)

2. SAME—IMPROVEMENT OF STREETS—LIGHTS—DUTY OF CONTRACTOR. A contractor engaged in improving a city street must place suitable lights in the nighttime on barricades to warn the public of the presence of the barricade, and that the portion of the street closed and barricaded is not open to travel. (Page 21.)

3. SAME—ACCIDENTS IN STREET—NEGLIGENCE OF CONTRACTOR. That a contractor engaged in improving a street had agreed in his

contract with the state road commission to provide "a competent watchman at all times to protect the work from traffic, or damage of any nature until traffic is admitted," did not render him negligent in failing to place a watchman on the work, as far as an automobilist, who ran into a barricade erected to warn the public that the street was closed to travel, was concerned. (Page 21.)

4. SAME—ACCIDENTS ON STREETS—NEGLIGENCE—PROXIMATE CAUSE. Although a contractor improving a city street was negligent in barricading the street and in providing a passageway, he was not liable for damages occasioned an automobilist driving through such passageway in the nighttime, due to the placing of wagons in the passageway by a third person in the nighttime, without the contractor's consent, leaving a passage too narrow for vehicles to pass each other, compelling plaintiff, upon suddenly meeting a speeding automobile in the narrow passage, to turn into the barricade to avoid a collision, the contractor's negligence not being the proximate cause of injury received.[1] (Page 22.)

5. SAME—IMPROVEMENT OF STREETS—NEGLIGENCE. A contractor improving a city street, who left a narrow passage for traffic, was not in duty bound to anticipate that during the night a third person would leave a loaded wagon in such passage, and cause damage to an automobilist during the night. (Page 22.)

Appeal from District Court, Third District, Salt Lake County; *R. B. Porter*, Judge.

Action by John B. Davis against J. W. Mellen and George H. Sims and others, copartners doing business under firm name and style of Salt Lake Transfer Company. Judgment for plaintiff after dismissal of action against the partnership, and Mellen appeals.

REVERSED.

*Stewart, Stewart & Alexander* of Salt Lake City, for appellants.

---

[1] *Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 Pac. 863; *Dayton* v. *Free*, 46 Utah, 277, 148 Pac. 408.

*Dey, Hoppaugh & Fabian* of Salt Lake City, for respondent.

CORFMAN, C. J.

Plaintiff brought this action in the district court of Salt Lake county to recover damages alleged to have been sustained by him through the negligence of the defendants while he was driving his automobile on State street, a public highway leading from the south into Salt Lake City. At the trial plaintiff dismissed his action as to the defendants constituting the partnership Salt Lake Transfer Company, and then proceeded against Mellen alone, whom we shall hereinafter refer to as defendant.

Mellen was a contractor engaged by the State Road Commission hereinafter referred to as the commission, to lay cement pavement for the surfacing of certain portions of State street between Salt Lake City and Murray. He was required, under his contract with the commission, to do the paving in sections. He had finished the pavement at or near the intersection of Twenty-first South street with State street when it was found that a water pipe or conduit crossing State stret at that point was of insufficient size, and that it would be necessary to take it up and replace it with a larger one in order to carry the water. He was requested by the commission to make the change after the completion of the pavement as before stated, and was engaged in so doing when the accident occurred of which plaintiff complains. While proceeding to the work of taking up the pipe and replacing it certain barricades were placed by Mellen across State street to warn the public of the excavations made in the street, and to prevent vehicle travel over the green cement used in repairing the pavement where the pipe was being replaced. Twenty-first South street is sixty-six feet wide. State street is one hundred and thirty-two feet in width, and is traversed through or near the center by a double-track street railway line. The pavement had been laid on both sides of the street railway lines. To better illustrate the conditions on State

street at the time and at the place of the accident we have drawn the accompanying sketch or. plat. The plat is not drawn to scale, nor is it intended to do more than represent the conditions in a general way.

The two sets of parallel lines represent the street car tracks near the center of State street. The space between tracks is six feet eight and one-half inches wide. The heavily shaded spaces indicate paved portion of street, sixteen feet in width on either side within two feet of street car line. The lines extending at right angles with the paved portions of the street represent wooden barriers approximately three and one-half feet in height, entirely closing State street to the west of car tracks, and partially to the east, for a distance north and south between barriers. The two small circles represent telephone poles. Attached to the ends of the wooden barricades, and passing around and nailed to the poles, as indicated by irregular line, was a wire mesh forty-two inches high, containing twelve longitudinal wires with numerous cross-wires. The light dotted space indicates the passageway or detour around the barricaded section of the street taken by vehicles in leaving and returning to the pavement, covering a distance of about eighty feet. The two parallelograms marked ''w'' indicate two wagons attached together and heavily loaded with flat steel, standing within the traveled detour. Both were platform wagons. The north wagon had an elevated seat. The effect of the barricades was to direct all travel from the west side to the east side of the street, and to pass vehicles over and through the open passageway or detour about thirty-one feet in width. The heavy line marked ''BB,'' to the east of property line, represents a bill board, while the parallelogram ''C'' represents a cottage. There were telephone poles along the east side of State street not shown on the plat.

Appeal from Third District.

In preparing the foregoing plat we were unfortunately deprived of the benefit of the exhibits used at the trial of the case, which should have accompanied, but are missing from the files and record on appeal. It is not claimed to be a detailed representation of all the conditions surrounding the accident and it may not be in all respects accurate. . However, we think it fairly illustrates the conditions and reflects the testimony of witnesses who saw them at or about the date of the accident.

It is alleged in the complaint in substance:

That the work was being done by the defendant J. W. Mellen under the authority, direction, and supervision of the State Road Commission of the State of Utah; that reasonable care and prudence was required of the defendant J. W. Mellen in doing said work, and the said commission exacted from him in the performance thereof that he should erect good and sufficient guards,

barricades, and signals and so perform the work as not to close the entire road, but should provide an open unobstructed passageway sufficient to accommodate and provide for the traffic and travel thereon in both directions, all of which the defendant Mellen failed to do; "that the only means provided by the defendant J. W. Mellen or otherwise, for the passage of vehicles traveling in both directions where the said State road was closed and barricaded as aforesaid was a passageway from said Twenty-First South street, extending south a distance of about one hundred feet in length, where it re-entered said State road; that said passageway was over premises immediately adjoining and adjacent to said State road on the east, and immediately east of the line of telephone poles aforesaid; that said passageway so provided was rough and uneven, and only of sufficient width for two vehicles to meet and pass thereon by the exercise of great care and caution; that to the east of said passageway, extending in close proximity to Twenty-First South street, there was a long and high billboard which prevented persons traveling north on State road, prior to and when entering into said passageway, from seeing vehicles traveling west on Twenty-First South street intending to turn south on said State road until such vehicles turned into and had entered upon said passageway, and likewise prevented persons traveling west on Twenty-First South street intending to turn and go south on said State road from seeing approaching vehicles traveling north on State street until said passageway was entered; that during the evening of the twelfth of June, 1917, and about the hour of nine o'clock, as plaintiff is informed and believes the defendant Salt Lake Transfer Company wrongfully and negligently left two large transfer wagons attached together, and loaded with steel and machinery, to stand in and occupy, unattended, unguarded, and unlighted, a portion of the east side of said passageway for a distance of about fifty feet in length; that said wagons so situated left the width of the remaining part of said passageway, which was between said wagons and said line of telephone poles, a distance of less than eleven feet in width, totally insufficient for vehicles to meet and pass; that said passageway of approximately eleven feet in width was the only passageway for vehicles in both directions; that said defendants, and each of them, voluntarily and unlawfully permitted said wagons to obstruct said passageway for at least twelve hours, as plaintiff is informed and believes, notwithstanding the heavy and congested traffic over and upon said State road; that about three o'clock in the morning of June 13, 1917, while the plaintiff was returning home from Ophir, Utah, and driving his automobile north upon the said State road, with due care and caution, when he approached said portion of said State road

barricaded as aforesaid he turned into said passageway so pro-
vided as aforesaid, leading to Twenty-first South street; that
at the time there was no approaching vehicle of any kind in
sight; that while passing along the west side of said wagons
standing as aforesaid an automobile, traveling west on Twenty-
First South street, which had been obstructed from plaintiff's
view by said billboards and wagons, suddenly turned into said
passageway from the north; that a head-on collision was immi-
nent, and, to prevent such collision and its consequences, plaintiff
instantly accelerated the speed of his machine, and turned quickly
into said State road, thereby avoiding a collision with said ap-
proaching automobile in said obstructed passageway; that in so
doing plaintiff's automobile encountered and ran into a wire fence
forming part of the barricade upon the State road, which said
fence the plaintiff was unable to see or discover owing to the
absence of any light or other signal upon the same; that there-
upon plaintiff's automobile was upturned, and the plaintiff and
Mr. Kahn, who was traveling with him, were violently thrown
and caught under said upturned automobile; that at the time of
said accident said wagons had been wrongfully and negligently
by the said defendants, and each of them, permitted to stand,
remain, and obstruct the said passageway and view for about six
hours, as plaintiff is informed and believes, without any watch-
man or signal or warning or any other precaution whatsoever
being taken to guard or protect travelers or traffic along said
passageway; that said accident occurred without any fault on
the part of the plaintiff or said Kahn; that it was caused wholly
and solely by reason of the carelessness and negligence of the
said defendants and each of them in permitting said wagons to
obstruct and blockade said passageway and remain for an un-
reasonable time; also in not providing a watchman or watchmen
to warn approaching travelers from both directions of the con-
ditions and danger aforesaid; and in failing to have danger lights
and other signals to warn approaching travelers that said road
was barricaded and that said passageway was obstructed and of
the unusual and extraordinary conditions and dangers aforesaid,
which the said defendants and each of them knew, or by the
exercise of reasonable care and prudence ought to have known,
in time to have averted and prevented said accident; also in fail-
ing to provide and maintain a safe detour or passageway for
vehicles around the place where State road was barricaded; also
by reason of the negligent, careless, and wrongful conduct of the
said defendant J. W. Mellen in entirely closing said street to
traffic."

The answer of the defendant J. W. Mellen admits the do-

ing of the work under contract and by the direction of the State Road Commission, but denies that the work was being done in a negligent manner, or that he failed to maintain suitable barricades, notices, and warnings on the portion of the street being repaired, or that he left an unsafe passageway for travel; and affirmatively alleges that the accident to plaintiff was caused by his own negligence in fast driving, failure to observe the crossway, the lights, signs, and warnings placed there by defendant, failure to take heed of the approaching automobile, and negligence, without his knowledge, of the Transfer Company in leaving its wagons standing in and obstructing the passageway afforded for public travel.

Upon trial of the issues the jury found a verdict in plaintiff's favor, and a judgment was entered against the defendant.

On appeal the defendant assigns many errors, so many that it is impractical to set them all forth and discuss them here in detail. Summarizing, the defendant complains of the rulings of the trial court in denying defendant's motion for a nonsuit at the conclusion of plaintiff's testimony, the refusal to instruct and direct a verdict in favor of defendant, permitting plaintiff's counsel in addressing the jury to argue immaterial and incompetent testimony over defendant's objection, and that the verdict and judgment are not sustained by the evidence and are contrary to law.

There is not a great deal of conflict in the testimony. The physical conditions at and near the place of the accident, as testified to by the witnesses, were in a general way the same as alleged in the complaint and as admitted by the answer. Plaintiff introduced testimony to show that there were no lights on the barricades. Defendant's witnesses testified that lights were placed on the barricades to warn travelers at night, and that lanterns were seen there the morning following the accident, one of them still burning. There was also some conflict in the testimony as to how extended a view could be had of Twenty-first South street, and also of State street, while approaching the barricaded section from the south.

Robert B. Mark, a witness for the plaintiff, who had viewed the scene of the accident the same morning, made the following observations concerning road conditions:

"June 13, 1917, I made an examination at about 9:15 A. M. concerning physical conditions near the intersection of Twenty-First South and State street. State street, on the south side of its intersection with Twenty-First South street, was partly barricaded with barricades about three and one-half feet high. The barricade on the east side of the street extended to the first telegraph pole. There was another telegraph pole in the street on the east of the southeast telegraph pole. Between the two poles was thirty-one feet. * * * At a point eighty feet south of the intersection of Twenty-First South and State traffic had been diverted in a northwesterly direction. In this space, through which traffic was being directed, there had been left two vans of the Salt Lake Transfer Company. The van farther south was loaded with flat steel. The steel extended beyond the bed of the wagon to the south probably five or six feet. The wagon or pole of that wagon, was extended underneath the wagon ahead of it, and the wagon ahead of it was loaded partly with flat steel and partly with some pieces of machinery. * * * Extending on northerly from the north wagon were two poles to accommodate a three-horse team. The length over all, from the north point of the north wagon—that is, the wagon bed—to the south point of the projecting load of the second wagon was forty feet eight inches. Each wagon was approximately six feet across. The available traveling space between these wagons and the barricade was nine feet ten inches. * * * A wire mesh ran between the north telegraph pole and the south telegraph pole, and thence near the east side of the railroad track, marking the boundary lines of the barricade on the east side of State street. The distance from the north telegraph pole to the south telegraph pole is thirty-eight feet four inches. The distance from the south telegraph pole to the south edge of the load on the south wagon of the Transfer Company is forty-one feet. The distance from the southeast pole to the barricade to the property line on the east is about thirty-five feet, so that there was left thirty-five feet of the street east of the barricade. * * * I noticed that the street had been traveled by wagons east of where the Salt Lake Transfer wagons were located, the width of another team or another wagon, which showed that the passageway extended east eight or ten feet, and that this had been used as a part of the passageway. I am speaking of the south wagon. The south wagon was nineteen feet eleven inches east from the east rail. The south end of the south wagon bed was about two feet five inches east of the east

line of the pavement. The steel projected about five feet over the hind end of the south wagon and about a foot and a half or two feet over onto the pavement. * * * I found that the wire barricade running from the south pole to the railroad track was not intact. All the wires were broken into from the machine coming in contact with and pulling the wire. * * * The wires on the east side of the barricade running between the two telephone poles was still intact."

The plaintiff testified concerning the accident:

"The accident occurred about 2:30 A. M., June 13, 1917, while I was driving my car north on State street. Mr. Kahn, another traveling salesman, was with me. We were coming from Grantsville, Tooele county. I was traveling about twenty miles an hour when I was going around the end of the wagon, the large truck standing on the east side of State street. When I got around the end of the wagon and within a short distance from the telegraph pole another machine drove in from Twenty-First South street. I saw I was going to have a head-on collision, and I turned my car quickly, and used my accelerator, and gave her more gas, and turned back into State street, and I thought it was about the only course I could take at the time to save me having a head-on collision. As I made my turn I got in contact with the wire. I was watching the road as I came up State street. I observed Twenty-First South street at the only point that it could be observed; that would be back and east of the billboards there. That is the only place that I could observe Twenty-first South street with these wagons there where they were. The lights on the car coming towards me were dim. They had their dimmers on. I was about four feet in the cutoff or passageway from the south pole when I observed this car approaching. * * * There were no lanterns or other lights on the wire or wagons. I did not see or hear a watchman. The next thing I heard was the lights break, the glass in my lap, and I knew I was up against a wire fence. I saw the fence at the time. I went down over that little embankment south of the pole, and the car jarred and swerved. I do not remember very much more until I found myself under the car. * * * I was perfectly familiar with Twenty-First South at the time of the accident, and knew the billboards were in that locality. Every man that rides up and down State street and looks to the right or to the left of him with a view of seeing whether any one is coming down at that intersection northeasterly sees those signboards. In approaching a street light at Twenty-First South, in order for a man to have any degree of security or safety it is necessary for him to look both to the right and to the left of him and in front of him to see who is approach-

ing from that point. That is true. Twenty-First South is a very much used street, and that intersection with State is a very busy intersection. I knew that this night. I knew there was an obstruction there Monday morning, and I thought there was an obstruction there the night of the accident. I presumed there was, and I was watching for it until I saw those wagons, then I made my turn. * * * Q. Now you state here in your complaint that the reason why there wasn't enough room through that passage-way for two vehicles to pass, or two machines to pass, was because of the two wagons that were left there by the Salt Lake Transfer Company. Is that true? A. Yes, sir. Q. Was there ample room for two vehicles to pass each other there if these two wagons had been out of the way? A. Yes, sir. Q. If these two wagons hadn't been there when you saw this machine coming, if you did see one coming, you would have had ample room to have turned to the right, and the automobile coming towards you would have ample room to have passed you. That is true, isn't it? A. Yes, sir."

The contract between the State Road Commission and the defendant for the improvement of State street, among other things, provided:

"All the work shall be done in sections consisting of the space between the property line and the center of the street, so that the street at no time shall be entirely closed to traffic. No deviation from this rule will be allowed, except upon written permission from the engineer. * * * The contractor shall erect and maintain good and sufficient guards, barricades, and signals at all unsafe places at or near the work, and shall in all cases maintain a safe passageway at all road crossings, crosswalks, and street intersections, and shall do all other things necessary to prevent accident or loss of any kind. The contractor shall provide necessary lights, barricades, fences, etc., and a competent watchman at all times, to protect the work from traffic or damages of any nature until traffic is admitted."

The testimony shows beyond any dispute that while the im-provement was being made by defendant under direction and supervision of the State Road Commission the defendant had no authority to direct or control the traffic of the street, except incidentally to the work of making the improvement, by barricading the section where the work was being performed by him under the contract. The undisputed testimony also is that the defendant had no knowledge of the act of the Salt Lake Transfer Company leaving its wagons standing in the

passageway (which wagons were placed there in the night-time and in defendant's absence) left open by the defendant in the street for public travel around the closer and barricaded section.

In the presentation of the case to this court counsel have devoted in their briefs, needlessly we think, much space in citing cases and in the discussion of the rights and liabilities of the defendant under his contract with the State Road Commission. As we view the case, and more especially in the light of the decisions of this court in *Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 Pac. 863, and *Daylon* v. *Free*, 46 Utah, 277, 148 Pac. 408, and the authorities there cited, the defendant was an independent contractor, and the only questions to be determined here are, was the defendant negligent, and, if so, was his negligence the proximate cause of the injury of which the plaintiff complains? Having these questionse in mind, we have quoted more extensively from both the pleadings and testimony than we otherwise would, in order that the assignments of error may be considered as a whole and as bearing on this one important matter for our determination. The contract between the State Road Commission and the defendant, in so far as the issues between the plaintiff and the defendant are involved, is of but little consequence, except for the purpose of showing that the defendant rightfully entered upon the highway for the purpose of improving the street. The right to barricade and obstruct the public travel over the section of the street being improved, upon principle and authority, was a paramount right. *Phelan* v. *Granite Bituminous Paving Co.*, 227 Mo. 666, 127 S. W. 318, 137 Am. St. Rep. 603; 13 R. C. L. title "Highway," section 88. We find nothing in the record tending to show that the closed section of State street was not properly barricaded. That it was the duty of the defendant to place suitable lights in the nighttime on the barricades to warn the public of its presence, and that the portion of the street closed and barricaded was not open to travel, must be conceded, regardless of his contract with the State Road Commission that he must do so. The contract further provided that

the defendant should provide "a competent watchman at all times *to protect the work* from traffic or damages of any nature until traffic is admitted." (Italics ours.) The testimony is in conflict as to whether or not lights were on the barricade on the night of the accident in question. That there was no watchman present is an admitted fact. We find no testimony in the record tending to show that it was necessary, usual, or customary to have a watchman there for safeguarding the public or for any purpose other than "to protect the work" as is provided in the contract. His failure to do that was a matter, as we view it, wholly between himself and his employer, the State Road Commission, and not one of which the plaintiff in this action may complain.

Again, referring to the contract, some contention is made by respondent that under the contract defendant was not authorized to barricade the street to the extent it was closed to public travel. In other words, that after barricading the west side the entire east side should have been left open for travel. We do not so construe the contract. It simply provides, "The street at no time shall be entirely closed to traffic." That a portion of the street was left open for travel by the passageway, over which hundreds of automobiles and other vehicles were daily passing, the testimony shows to be an absolute certainty. **1-3**

But conceding that the defendant was negligent in all the particulars complained of, the question still remains, was the defendant's negligence the proximate cause of the injuries? We think not. The plaintiff's own testimony conclusively establishes that immediately before the accident, when he was in the passageway, he appreciated and knew of the closed section of the street. He had driven his automobile over State street but a day or two before and had passed through the passageway. He remembered it, and, as he was approaching the closed or barricaded section, he followed the traveled track of vehicles fully conscious of the fact that he was entering it. Unobstructed, there was ample room for his automobile to pass in safety any approaching vehicle from the north or opposite direction. Left standing unattended in

the passageway, without lights or other signals of warning upon them, were the two wagons of the Salt Lake Transfer Company, closing it so that vehicles moving **4, 5** in opposite directions could not pass. As plaintiff entered the passageway where the wagons stood he saw an automobile with an unknown driver dashing through the passageway at a speed of not less than thirty miles an hour. Plaintiff was driving twenty miles an hour. A head-on collision was imminent, to avoid which he quickly turned his machine into the wire of the barricade and was injured. Had the wagons not been left standing in the passageway plaintiff would have passed through in perfect safety. Had the approaching driver not been driving his machine at so reckless a speed no danger would have confronted plaintiff, and he would have had time to pass without accident. The plaintiff so testified. The closing of the passageway by the wagons so that two vehicles could not pass, and leaving them there without signals and unattended through the night, and the reckless speed with which the automobile was driven through it by the unknown driver, were the two contributing and the proximate causes of the plaintiff's injuries, of neither of which did the defendant have any knowledge, nor was he, under the circumstances, in duty bound to anticipate.

Admitting that the barricades were insufficient about the closed section of the street, that they were left without lights or proper signals of warning, yet the fact remains beyond any dispute, had it not been for the wrongful acts of others in leaving the wagons standing in the detour or passageway, and the reckless manner in which the automobile driven from the north approached the plaintiff, which, as we have pointed out, were the sole proximate causes of the accident, the plaintiff would have passed by the closed section of the street without harm, regardless of any act of omission or commission charged against the defendant.

We think the trial court erred in not granting the defendant a nonsuit, in refusing to direct a verdict in defendant's favor, and in denying him a new trial. The findings of the jury in plaintiff's favor were not supported by the evidence,

and therefore the judgment entered against the defendant was contrary to law and should be reversed. It is so ordered. Defendant to recover costs.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.