## HANSEN v. CLYDE et al.

No. 5659. Decided April 25, 1936. (56 P. [2d] 1366.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*A. E. Moreton,* of Salt Lake City, for respondent.

MOFFAT, Justice.

This action was instituted by plaintiff to recover damages for personal injuries alleged to have been sustained while riding as a guest passenger in an automobile operated by a party not named in the complaint. The automobile which struck the automobile in which plaintiff was riding was operated by one Fred Bosone. Bosone is not a party to the proceeding. The alleged accident occurred on the highway between Lehi and American Fork in Utah county. The complaint charges that W. W. Clyde, Edward Clyde, Harry S. Clyde, and C. W. Mendenhall were copartners engaged in road construction work under the firm name of W. W. Clyde & Co. Summons was served on Harry S. Clyde.

It is alleged that on August 16, 1933, the state road commission of Utah entered into a written contract with the defendants for the construction of a new road or cut-off between Lehi and American Fork. The points of departure from and reuniting of the new road with the old are described by measurement references. The cut-off consists essentially of two curves forming a sort of letter "S." The point of departure on that part of the highway nearer to Lehi and as approached from the northwest is initiated by a right-hand curve, alleged to be a six-degree curve; that the defendants in pursuance of the contract were engaged in

the construction of the new road or cut-off. The following are the allegations of the complaint, the sufficiency of which was attacked by general and special demurrer:

"3. That on November 1, 1933, and prior to the acceptance of said new road or cut-off by said Road Commission, defendants had completed the northwest end thereof for a distance of approximately 150 feet, and that said portion of said northwest end, so completed, had the appearance of a highway open for public travel.

"4. That said contract provided that until said new road or cut-off was accepted by said Road Commission, that the same should be under the charge and care of defendants and that defendants should maintain a warning sign, for the safety of the public, at the beginning and at the end of said new road or cut-off, and that it was defendants' duty to maintain at each end of said new road or cut-off, and especially at the northwest end thereof, a warning sign for the protection of travelers upon said highway.

"5. That on November 1, 1933, defendants carelessly and negligently failed to close the northwest end of said new road or cut-off, or to maintain a warning sign, barricade or other warning device, at said northwest end, where the same intersects with said State highway, and by reason thereof, said northwest end had the appearance of a highway open for travel, as aforesaid; that, also, on said November 1, 1933, defendants carelessly and negligently maintained a barricade across said new road or cut-off approximately 150 feet southeasterly from said northwest end, which said barricade was outside and to the right of the headlight rays of automobiles approaching said intersection upon said highway from the northwest, and, by reason thereof, said barricade could not be seen by the driver of an automobile traveling upon said State highway toward said intersection from the northwest, and, by reason of the curve of said new road or cut-off, as aforesaid, said barricade could not be seen by the driver of an automobile traveling upon said State highway from the northwest and entering upon said new road or cut-off at said northwest end, until such driver was within approximately 50 feet from said barricade, and that such driver traveling at a speed of 35 miles per hour, upon seeing said barricade, could not bring his automobile to a stop within said distance of 50 feet.

"6. That on said November 1, 1933, at about the hour of eight o'clock P. M., plaintiff, as a guest passenger, was traveling in an automobile on said State highway in a northwesterly direction and to the right of the center line thereof, and that when said automobile had reached a point about 25 feet southeast of the intersection of said State highway with the northwest end of said new road or cut-off,

said automobile was violently run against by a Chevrolet automobile coming from the northwest, operated by one Fred Bosone, by means whereof plaintiff was severely injured as hereinafter more specifically stated.

"7. That plaintiff is informed and believes, and, on that ground, alleges the fact to be, that at said time the said Fred Bosone was traveling at a speed of approximately 35 miles per hour along said State highway, coming from the northwest, and that as he approached said intersection, he, seeing no warning sign, barricade or other warning device at the northwest end of said new road or cut-off, and believing said new road or cut-off to be open to travel, turned his said Chevrolet automobile to the right and entered upon said new road or cut-off and traveled to the right of the center line thereof, and that when he was first able to see said barricade, maintained by defendants, as aforesaid, at a distance of approximately 50 feet therefrom, he was then too close to the same to stop his said Chevrolet automobile, and that in such emergency, and for his own safety, he turned his said Chevrolet automobile to the left, and, in so doing, said automobile ran into loose gravel, by reason of which the said Fred Bosone lost control of his said automobile and the same passed through said gravel and onto that portion of said State highway on which plaintiff was traveling, and violently collided with the automobile in which plaintiff was riding, thereby causing the injuries to plaintiff of which complaint is herein made.

"8. That the carelessness and negligence of the defendants aforesaid, in failing to close, or to maintain a warning sign at, the northwest end of said new road or cut-off, and in maintaining a barricade so close to said northwest end that a driver entering upon said new road or cut-off from the northwest was unable to see the same in time to stop before colliding therewith, were the sole and proximate cause of plaintiff's said injuries."

The other allegations of the complaint are not drawn into the controversy. They relate to damages.

The general demurrer to the complaint as finally amended was sustained and in due course the case was dismissed. The appeal is on the judgment roll. The only question raised by the appeal and assignment of error is: Does the complaint state facts sufficient to constitute a cause of action against the defendants? We think the complaint insufficient and that the trial court's decision thereon was correct.

Under the allegations made, could Fred Bosone, if he were free from negligence, recover against the defendants? We think he could not. It is alleged that Fred Bosone was traveling at a speed of approximately 35 miles an hour along the state highway, coming from the northwest; that as he approached the point of departure of the new road, "seeing no warning sign, barricade or other warning device," he turned his automobile to the right and entered upon the new road. No reason is assigned why Bosone should leave the established and recognized highway that lay open straight before him. This may not be important. Whatever the reason, none is alleged except such as may be gleaned from the general allegations to justify a traveler in departing from the straight course before him. He probably had a right to do so. Presumably for the purpose of inferring inducement, it is alleged that defendants "failed to close the northwest end of the new road," and that the new road "had the appearance of a highway open for travel"; that the "northwest end * * * for a distance of approximately 150 feet * * * had the appearance of a highway open for public travel." It is not alleged that the new road is a public highway or that it was open to the public for travel. The allegations compel the inference that it was not, but was in the course of construction, under an uncompleted contract with the state road commission, and that the new construction or cut-off road had not been accepted.

Plaintiff alleges that the contract between the defendants and the state road commission provided that, until the new road was accepted by the state road commission, the new road should be under the care and charge of defendants, that under the contract defendants should maintain a warning sign for the safety of the public at the beginning and at the end of the new road, and that it was defendants' duty to maintain at each end of the new road a warning sign for the protection of travelers.

Under the contract, the duty to maintain warning signs was a matter between the state road commission and the

contractors. It is not alleged at what particular point in feet the contract required the warning sign to be placed. It is alleged "at the beginning and at the end." Whether or not there was a breach of the contract by the placing of a warning sign 150 feet from the end of the new road is one thing, and whether it is negligence is quite another. That the state road commission had by the terms of the contract required the erection of warning signs neither helps nor hurts plaintiff's cause based upon negligence. *Davis* v. *Mellen*, 55 Utah 9, 182 P. 920, 7 A. L. R. 1193.

Assuming that the new highway had the appearance of being open for traffic, or that it was open for a distance of 150 feet, was it negligence to fail to place a barrier or warning sign at that "end"? When a hazard is created by a contractor upon a public highway, it becomes his duty to place suitable barricades or warning signs and in the nighttime to properly place lights to warn the traveling public of the presence of the hazard. This duty is one running to the public, regardless of the contract. It is not alleged that defendants created a hazard upon the main highway that was open to travel, but it is complained that the barricade on the new road under construction was not at the end of the new road or point of departure of the new curve from the main highway.

Now as to the barricade itself: It is alleged the barricade was 150 feet from the northwest end of the beginning of the curve. Whether that point is on the center line of the highway does not appear. It is alleged that the barricade was outside and to the right of the headlight rays of the automobile approaching the point of curve of the new road. Why should this not be the proper place? It is further stated that the barricade could not be seen by the driver of an automobile traveling upon the straight highway. No hazard was created by defendants upon the open unobstructed, main, or straight highway. It is further alleged "that by reason of the curve of the new road or cutoff" and the direction of the headlight rays, the barricade

could not be seen by a driver entering the curve from the north west until within 50 feet from the barricade. Under such an allegation barricades at intervals of less than 50 feet would have been useless. No complaint is made about the sharpness or character of the curve. The failure of the driver of the automobile, as alleged, to see the barrier, was because of the character of the lights upon the automobile and the curve. No duty rests with the state road commission or contractors under it to straighten out curves to conform to the measure by which direct rays of light may be cast ahead to light a curve. R. S. Utah 1933, 57-7-57. Under the allegations made, after the driver had once entered the curve, no matter how many barricades had been placed or their distance apart, they could not have been seen until the alleged driver was within 50 feet of them. When a driver upon a public highway with his light equipment cannot see more than 50 feet ahead of him, it his duty to drive at such speed as will enable him to stop within that distance. *Dalley* v. *Mid-Western Dairy Products Co.*, 80 Utah 331, 15 P. (2d) 309. We cannot see that there was any negligence as revealed by the allegations of the complaint on the part of the defendants that would entitle the driver of the automobile, Fred Bosone, or the plaintiff, to charge them with negligence.

If it be assumed that negligence was alleged in terms against the defendants, then liability would attach for all the injurious consequences that reasonably and naturally follow from the negligence until such negligence is diverted by the intervention of some efficient cause that makes the new or intervening cause responsible or ■ that sets in motion the negligent force that becomes the proximate cause of the injury. It is often difficult to apply this rule in identifying the intervening cause and measuring the degree of importance or responsibility to be attached to it. If the result is merely accelerated by the new or intervening cause, the chain of causation is not broken, and, as here, the negligence of the defendants, if they were shown to be negligent by the facts stated, might or

might not be an efficient intervening cause carrying over with the negligence of Bosone, if he were negligent.

Notwithstanding this situation, which of itself would be sufficient to defeat plaintiff, the complaint alleges: That, when he was first able to see the barricade, maintained by defendants as aforesaid, at a distance of approximately 50 feet therefrom, he was then too close to it to stop his automobile. This may have been negligence on the part of Bosone, but does not charge the defendants with negligence. It is then alleged that in such emergency, and for his own safety, he turned his automobile to the left, and in so doing the "automobile ran into loose gravel"; that by reason of the loose gravel "the said Fred Bosone lost control of his said automobile and the same passed through said gravel and onto that portion of the State highway on which plaintiff was traveling and violently collided with the automobile in which plaintiff was riding," thereby causing injuries to the plaintiff. As alleged, the "automobile ran into loose gravel, by reason of which the said Fred Bosone lost control" of his automobile. Fred Bosone, notwithstanding the curvature of the road and nature of his headlights, saw the barricade in time to exercise sufficient control to turn to the left and miss the barricade, and because of the loose gravel lost control. There is no allegation that the defendants were in any way responsible for the loose gravel or that, but for the loose gravel, notwithstanding the barricade, he may not have safely regained, without mishap, the highway he had temporarily left. *Smith* v. *Locke Coal Co.*, 265 Mass. 524, 164 N. E. 381, 61 A. L. R. 1052.

In the view we take of the case, the allegations of the complaint fail to disclose negligence on the part of defendants. We need not discuss the questions of proximate cause, immediate or remote, nor questions involved in concurring negligence situations whether proximate, continuing, or remote.

The judgment of the lower court is affirmed; respondent to recover costs.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (dissenting).

I think the prevailing opinion oversimplifies the problems presented. This case involves, among other matters, the duty of a contractor to the public. What was that duty? Ordinarily when one road, apparently open for travel diverges from another and there is nothing to warn travelers that such branching road is not for use, it is natural that they should use it and it is not negligence for them to do so. They need give no reason for going upon it or why they did not continue on the other road. Consequently, I see no relevancy to the statement in the prevailing opinion that "no reason is assigned why Bosone should leave the established and recognized highway that lay open straight before him." He need assign no reason. The prevailing opinion seems to concede he had the right to, states the reasons for his doing so are not important, and yet implies that he should have stated the reasons in the complaint. I think from the allegations of the complaint we must take it that in the nighttime the cut-off appeared to be open for travel because in appearance it was a finished road, from all Bosone could see, upon which the public was invited to go. I do not maintain that the contractor has a duty while constructing a road leading from another to notify the public at the intersection that the branching road further on is under construction and not to proceed on it. The contract with the state road commission may require it. But the case of *Davis* v. *Mellen*, 55 Utah 9, 182 P. 920, 7 A. L. R. 1193, very well laid down the rule that the requirements of the contract between the road commission and the contractor were not the measure of the duty of the contractor to the public. Those requirements might be greater or less than the dictates of due care toward the public called for. *Lewis* v. *La Nier*, 84 Colo. 376, 270 P. 656. Whether the duty of the contractor laid down by the contract constitutes due care under all

circumstances need not be here decided. To put a warning sign at the point of divergence may be a great convenience which would save the public time and annoyance. But, where the contractor is aware, or should be aware, that the new road at the point of divergence presents an invitation to the public to travel upon it, it may be his duty to warn the public by sufficient and timely barricades placed far enough ahead of the construction work on the diverging road to inform them of that construction. If that work has progressed several miles from the junction point, it might be unfair apparently to invite the traveler to come in only to apprise him that he would have to turn back at the barricades. But in most cases let it be assumed that the contractor's duty would have been fulfilled if, when the traveler approaches the construction, he is timely and adequately warned of it; for, under ordinary circumstances even if it were negligence not to place a sign at the intersection, such negligence could not be the proximate cause of the accident if timely warnings were placed before the actual construction work. Therefore let it be assumed that the contractor's duty would be, after the traveler came on the new road, exactly what it would be if he were repairing the old and traveled road from which the diversion was made. Consequently, under ordinary circumstances, the contractor would not have been negligent in failing to place a sign at the intersection or, if negligent, such negligence would be disregarded in a case like this. For instance, if a motorist, lured into the new road by absence of signs, goes several miles and then fails to see a barricade in time, and suddenly swerves to avoid it, skidding into a field and hits a farmer in the field, the contractor would not, without more, be liable because he failed to prevent the traveler from traversing the new highway. Even if he were held to be negligent in failing to warn the traveler at the intersection, that negligence could not be said to have contributed to such accident. The accident was solely due to the motorist's failure to see the barricade in time. True, if he had been warned not to come on the highway, the accident would not have happened, but such

a calculus of probabilities can be indulged in in respect to every accident. Had he not ridden that day the accident would not have happened. The failure to place the sign at the point of intersection, if negligence, is said to be "too remote" as a cause. Therefore, under the ordinary case, the contractor could not be said to be negligent in not placing a warning at the intersection, or, if negligent, such negligence would not be considered as having contributed to the accident. The motorist does not carry such negligence of the contractor, if it is negligence, with him as a convenient alibi.

But how stands it in this case? Circumstances, apparently trivial, can change the situation as far as negligence is concerned very materially. In this case it is alleged that the cut-off left the main highway in the form of a curve. At night it is alleged this made a situation where one invited to enter the road (we may consider it such) would have his lights pointed on the road for only a certain distance, and after that the rays would be prolonged out into the field instead of on the road. In short, it is attempted to allege a situation where the barrier was so placed as not to give timely warning; for, while a motorist may be negligent in not seeing an obstacle, the placer of the obstacle may also be negligent in placing it in a certain position. *Dalley* v. *Mid-Western Dairy Products Co.*, 80 Utah 331, 15 P. (2d) 309. If the curve in the cut-off were substantial from the very point of diversion and there would be no place to put the barricade except on the curve, the contractor might in such case have been negligent in not warning travelers not to enter the cut-off. This is not because it may be negligence not to place a warning at the point of divergence, but because that is the only place it can be put so as not to be on a curve where it cannot be seen far enough ahead; that is, where it really could serve as an adequate and timely warning. And, where the curve immediately leading off from the main road was considerable and the construction was being carried on at a point on the curve or at a point where a barricade could not be placed on the approach to the con-

struction a reasonable distance ahead of it without such barricade being on such considerable curve, the contractor might have been negligent in not warning travelers at the intersection not to come on the cut-off at all. In such case his only means of avoiding the placing of the barrier on the curve and thus working the result alleged may be by warning motorists at the intersection. It is alleged that the barricade was placed so as to be out of the line of the lights of an automobile approaching it. Therefore the question of whether the defendants were negligent was for the jury.

Was Bosone negligent? Under the decisions of *O'Brien* v. *Alston*, 61 Utah 368, 213 P. 791, *Nikoleropoulos* v. *Ramsey*, 61 Utah 465, 214 P. 304, and *Dalley* v. *Mid-Western Dairy Products Co.*, supra, Bosone was negligent. In the first case, it does not appear that the barricade was wrongly placed. In the second case, the man struck was rightfully on the highway. In the Dalley Case a truck was left across the highway without lights. When the point decided in that case directly comes before this court in some future case, I hope to pay my respects to it. At this time I shall say only that I hope some rule more nearly comporting with the realities of travel, although perhaps not so logical, may be worked out whereby one who endangers travel by deliberately and wrongfully placing a dangerous obstacle in the path of that travel may not go scot-free because the traveler is in law required to see it. I think the traveler should be given the benefit of some presumption that others have not wrongfully obstructed the highway. Be that as it may, at this juncture the state of the law in this jurisdiction is that Bosone was negligent. The logic of the rule is that he must be able to stop within the distance he can see objects on the road; not out in the field. On a curve he must slow down to a point where he can stop within the distance his lights reveal objects on the bending road. That may be only a few feet. I suppose logically it would be the same on approaching a hill. As he approaches the top where objects may be hidden, he must slow down to a point where he can stop if some object is left on his right of way just over the top of

the hill where he cannot see it. He cannot presume that others have performed their duty. In this case, if Bosone could see only 50 feet of the road, he was bound to go at a speed when he could stop within that 50 feet. Thus we arrive at the second proposition that Bosone was in law negligent.

We next come to the difficult question as to whether the negligences concurred to contribute to the accident. It will take some more grim philosopher than I am to attempt to reconcile the number of conflicting decisions regarding situations which, although having different facts, are in principle basically the same. There is, too, such a thing as wrongly decided cases. The decisions use such terms as "too remote," "proximate," "immediate," "efficient," and "concurrent causes"; "foreseeable consequences," "that which was foreseeable"; and "independent," "intervening," and "supervening causes." Every lawyer is familiar with their use. The trouble arises in the lack of any criteria by which to test when a cause is "too remote" or is "concurrent" or "intervening" or "independent." And, indeed, it is impossible to obtain anything mathematical. But I do not think all has been done by the way of analysis to simplify the problems. Too much has been left to these indefinite phrases. I shall set down hereunder nine categories under which most alleged negligence cases will fall. They represent types. But, in order to apply the type, it must be kept in mind that negligence is not something in itself. It always exists in connection with an act or an omission to act. It is the color given to an act or, in the case of an omission, is that omission itself. An act in itself is just the act— neither negligent nor otherwise. Thus, where one's car collides with another, the act of running the car is, as always, just the act of running the car, but the manner in which it was run, or in some cases the very act of operating it at all, may have been the negligence. Take away the effect, and there is left just the series of phenomena always present in running the car. In this case it ran into something, and there were different results. We call it negli-

gent if the very doing of it or the manner of doing it was so attended with circumstances or a likelihood of such consequences which would make it dangerous to the life, limb or property of the doer of the act or of others.

As to the classes: First. Single dynamic negligence. The simple case where one sets in motion a train of direct links of cause and effect, each effect being the cause of a succeeding effect until the event or accident is reached. The simplest of these is where the cause which produces the event is immediate with no links between, as where one drives his car against another with no intermediate links—trespass vi et armis. But, regardless of how mediate or immediate the initial cause may be, if there is a straight succession of cause and effect leading to the event, it is clearly a case of proximate cause. Thus where a car runs against a pole, knocks it down in such a way as to knock a part from a house which falls and injures a pedestrian. This was still trespass, because the chain was continuous and always in action. And, if the agencies which transmitted the initial cause to the final outcome acted spontaneously or automatically, it was still considered as a succession of inanimate agencies, one acting on the other (Squib Case [*Scott* v. *Shepherd*], 2 W. Bl. 892, 3 Wils. 403), and the form of action was trespass.

Second. Where the initial cause is still one in action but an intervening agency in one of the links is wholly or partly a free agent. Thus where one fails properly to hitch a spirited horse. It becomes frightened, speeds away, is shied away by a person toward whom it is running, and thereupon diverts its course and runs over a child. This at first gave the authorities some trouble, because there was debate as to whether the shying of it off its course was not an intervening agency. It was held not, because such act was a natural consequence of the horse's bearing down upon the person. While the chain started by the horse on a wild run was not foreseeable in each particular or detail or in the manner in which each link would occur, such act of the endangered

person was looked at in the "happened" state, as a foreseeable event. It was trespass on the case.

Third. Where two entirely independent chains of cause and effect converged in the event or on a single object. Thus where two automobiles practically simultaneously, neither influenced nor its action caused by the other, strike a third car. These are concurrent chains or accidents and not concurrent negligences, as we generally use the term. Concurrent negligence is where two links in a single chain of events are said to be negligence. This class presents comparatively rare cases and gives rise to two causes of action against two different parties.

Fourth. Concurrent dynamic or active negligences. Example: Where two cars, both negligently operated and because of their combined negligences, give rise to a situation which injures a third party. Both approach the event (subsequent accident) with negligence or negligently.

Fifth. This brings us to the class of cases where one of the agencies in the chain is a static condition—a negligently maintained condition. The negligence is not one in action. Thus where there are loose bricks on a chimney and a wind blows one off and it hits a pedestrian. This represents a large class. An active agency operates on, or is operated on by, the statically negligent condition. The condition may have been affirmatively created by an individual as in the Lydecker Case, infra, or may have been allowed to come into existence as in the chimney case. It is a case in which some one sets the stage and the actor walks upon it. Such a case is illustrated by *Lydecker* v. *Board of Chosen Freeholders of Passaic County,* 91 N. J. Law, 622 103 A. 251, L. R. A. 1918D, 351, where the contractor placed an excess amount of oil on the road and a cyclist rightly on the road skidded because of it. It appears to me this case should have been differently decided on the point that the duty of the contractor to erect barriers to warn the public of danger was a duty owing only to the county.

Sixth. Concurrent dynamic and static negligences. It is the fifth class, with the added fact that the actor walking on the stage is himself also chargeable with negligence. He sets off the condition, not by mere act, but by a negligent act. The negligent condition awaits him, but he also comes to it with negligence or negligently. A ladder leaning in an alleyway tipped over by the negligent driving of a truck, so that its falling end strikes a pedestrian; or where a gas company permits gas to escape and another person looking for the leak strikes a match and a third person is injured by the explosion. *Memphis Cons. Gas & Elec. Co.* v. *Creighton* (C. C. A.) 183 F. 552.

Seventh. The class where the "condition set" operates upon a human mind in that it makes imperative a quick decision in order to avert one danger, which decision itself constitutes a link in the chain. The mind operated upon may be (a) free from negligence in getting itself in a position where he is compelled to make the decision, or (b) guilty of negligence in so doing. An example of (a) is where a contractor cuts a trench across the road, failing to put up any barricade or warning, and the cut is impossible to see before the motorist comes upon it. The motorist suddenly turns and runs into a person alongside the road. An example of (b) is the instant case where the contractor may be negligent but the driver is also negligent in driving at such speed as not to see the barricade in time and thus negligently gets himself into a position where he must extricate himself. Subclass (b) involves concurrent negligence; subclass (a) only single negligence. It is in this class we begin to experience difficulties because of the intangible element of a mental process coming into the chain. Wherever the action of the human agent is based on a decision which was not the quick reaction from, or if it was only remotely or questionably influenced by, the condition met, such action will be considered as starting an independent or supervening or intervening chain of causation so as to make the "condition set" not a contributing cause. Thus in the case of *Smith* v. *Locke Coal Co.*, 265 Mass. 524, 164 N. E. 381, 61

A. L. R. 1052, where a coal chute extending from the wagon across the sidewalk influenced a pedestrian to divert his course around the wagon into the street where he slipped on ice. The negligence of the coal company in violating the city ordinance was not a contributing cause; the new course of the pedestrian starting a new and distinct chain of causation.

Eighth. The omission class. It will be noted that in all the previous classes some affirmative, dynamic, or static act of negligence was present. We now have the difficult class of where an omission, and not an act, appears in the chain. In one sense every negligent act involves an omission; the omitting to do the careful thing or the omitting to subtract the dangerous element from a situation. Thus, in the example of the sixth class, one person omitted the act of taking the ladder away. It was the leaving of it leaning on the wall which constituted negligence and not necessarily the placing of it there. But the negligence consisted of permitting or creating a dangerous condition to exist which could easily be set off to bad consequences. The omission meant in this class is not of that sort. It consists of omitting to do what would have been ordinarily required of a prudent person; omitting not the negligence attendant on an act, but omitting the doing of an act or series of acts themselves. Thus where a person fails to make an inspection and the fastening of the cornice rusts away and it falls, injuring a pedestrian. *Howard* v. *Redden,* 93 Conn. 604, 107 A. 509, 7 A. L. R. 198. Here there was no negligence in maintaining the cornice in the fastened condition (or, if negligence in so attaching it, such negligence was not causative), but failure to inspect and repair which caused the damage. The neglect must be a link in the chain, but for which the thing would not, or in all probability would not, have happened. Where the alleged neglect was not link in the chain of causation, even though, had the omitted thing been done, the accident might not have happened, the omission will not be contributory. *Davis* v. *Mellen,* 55 Utah 9, 182 P. 920, 7 A. L. R. 1193. Here the presence of a watchman might have

resulted in a warning and a prevention, but the chain of cause and effect was entirely independent of the presence or absence of a watchman. Where, however, the situation is such that due care and ordinary prudence would demand warnings by a watchman, an accident which happens which in all probability would have been prevented by the warning or the means of warning will be considered as resulting from a causation chain, one of whose links was the absence of such warning. By the very nature of this type of alleged negligence, it is ofttimes difficult to say whether the accident would probably not have happened but for the omission, or, put in another way, that the omission contributed to the accident. It will be found that in those cases where it is said such alleged cause is too remote the true reason is that there is not sufficient probability that a supplying of the omission would have avoided the accident. And, where the thing omitted would have been only for the purpose of guarding against the happening of those things which might naturally occur if there was an omission, the fact that something extraordinary occurred during but not because of the omission, the consequences of which might have been avoided if there had been no omission, but which consequences were not the natural or foreseeable results of the omission, will not make the omitter liable. *Thurbron* v. *Dravo Contracting Co.*, 238 Pa. 443, 86 A. 292, 44 L. R. A. (N. S.) 699, Ann. Cas. 1914C, 292.

Ninth. Those cases where it is claimed there was a concurrence of two or more active negligences, but one or the other or all consisted, not of the basic act itself, but of the manner of doing the act or omitting to do some incidental act which it is claimed should have attended the basic act, and, which, if done, would have avoided the effect of another's negligence. This class is illustrated by those situations where some one traverses the right of way of another but it is claimed that the other was going too fast or failed to sound a warning and a guest passenger or other third party was injured. The basic act of traveling on one's right of way was not negligence. It was the overspeed or failing

to give warning which it was claimed was negligence. The reason such situations may be put in a separate class is because they constitute cases where there is really an attempt to thrust on one party the duty to avoid the effects of the negligence of another and yet which do not fall under any situation where the last clear chance doctrine is applicable. The act or omission claimed to be negligence is not such in the sense that it operated on another agency in the relationship of cause and effect to cause an accident, but that, if it had not been present, the effect of the other's negligence would have been avoided and the accident thus prevented. Where the act of the party putting himself in danger was deliberate or he had every chance himself to avoid it as distinguished from the situation where everything came quickly, it will generally be found that the cases have held that the other party's so-called negligence did not contribute to the accident. *Haarstrich* v. *Oregon Short L. R. Co.,* 70 Utah 552, 262 P. 100. And the cases have divided on the question as to whether a motorist's overspeed in his own right of way can in law be held to have contributed to an accident caused by another assuming the right of way. One line of decisions holds that in such case the speeding had nothing to do with the accident, and that, while a person speeding over the course in which he had prior right of way may have been negligence, yet all that must be taken into consideration by one who wrongfully assumes the right of way and that the placing of himself across the course and not the speeding was the sole cause of the accident. This class of cases presents the very difficult question of how far a negligence which, had it not been present, might have saved the other party from the consequences of his act, can be said to be a contributing cause of the injury to a third person. I have attempted to point out that at least in the case where the one committing the paramount negligence had ample opportunity to avoid it himself, such as where there was a clear lookout, but he deliberately rode into the line of danger, the negligence of the other, if any, is too remote. This class of cases must not be confused with that

class in which speed of one or more actors was not an element which might have avoided the accident but was an active ingredient of negligence in the production of the accident. In such case it is truly a contributing cause.

In the above classes contributory negligence plays no part because it is a third person not chargeable with negligence who has been injured; nor have I attempted to show what is, and what is not, negligence, but only how negligence plays a part in the chain of causation. The classes may not be complete. Further analysis and synthesis may reveal other classes or a better classification. While the division into categories may not all be strictly relevant to this case, I have set them down here because I believed it would be an aid to assist in the reasoning on the question of whether the negligence of the contractor as alleged in the complaint was a contributing cause to this accident. As indicated, I think it falls under the seventh class. Under the old law it would be trespass on the case. But I seem to perceive that the allegations show that the placing of the barricade where it was placed forced on Bosone a decision which resulted in the accident; that the decision was required because he brought himself up to the barricade with too great speed does not affect the fact that placing it where it was placed, instead of at the intersection, was partially the cause of his having not sooner seen it, or, better still, causing him to come on the road where his speed, considering the position of the barricade, required him to make the sudden decision. We can assume that, if the case went to trial on the allegations as they stand, there would be no dispute as to the position of the barricade. In my opinion, this would present a question for the jury as to whether the contractor had been negligent. If the jury found him negligent in placing the barricade there, we would have the same situation as we would have had if in the Dalley Case a third party had been injured. Dalley could not recover because he himself was negligent, but, if a third party standing on the side of the road had been hit by the thrust of the Dalley car after the impact, no one would say that the concurrence

of two negligences had not caused it, and he might have sued either Dalley or the Mid-Western Dairy Company.

The fact that his sudden turning threw Bosone on loose gravel where he could not control his machine is simply one of those links in the chain which carries through to the accident and effect of the negligence. The observation of the prevailing opinion that the contractor did not put the gravel there is beside the point. No one says he did and no one holds him responsible for the action of the intervening agencies which took charge of the car after the negligence had its effect. The contractor's responsibility was for his particular act which the complaint sets up as negligence. He helped set in motion the operation of the car on loose gravel. That is sufficient.

For the reasons above stated, I dissent.