GEORGE ALBRIGHT *vs.* JOHN A. MACDONALD, HIGHWAY COMMISSIONER.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

---

Argued December 5th, 1935—decided January 8th, 1936.

*Raymond E. Baldwin,* for the appellant (defendant).

*Philip Reich,* with whom, on the brief, was *Samuel Reich,* for the appellee (plaintiff).

HAINES, J.  The finding states the following facts: The plaintiff with two companions was driving in a Pontiac roadster, about 10 p. m. August 2d, 1934, in a general northerly direction from Derby toward Stevenson Dam on a state highway known as Route # 34. He was on the right-hand side of the roadway and proceeding at a speed of approximately twenty-five miles per hour.  It had been raining and a light mist was then falling and it was dark.  The roadway was of water-bound macadam with an oiled surface treated with tar; it was eighteen feet wide with shoulders five feet wide, the latter being constructed of oiled gravel having the same appearance as the roadway itself but softer.  The roadway was crowned and was wet and slippery.  When near a pole which was alongside the road and was marked # 127, another car came from the opposite direction around a curve, its lights affecting the plaintiff's vision and making it difficult or impossible for him to see the highway beyond the approaching car.  The plaintiff applied his brakes which were in good condition and his car skidded toward the opposite or westerly side of the roadway, and though he made every reasonable effort to maintain control of it, it continued on over the shoulder of the road on to the adjoining ground, and the skid continued diagonally toward the top of an embankment for fifteen to eighteen feet until at a point about fifty feet north of pole # 127 it toppled sideways down the embankment toward the Housatonic River, and rolled over forty to fifty feet until stopped by a tree about

five feet from the river. The plaintiff was rendered unconscious and sustained severe injuries. This portion of the highway was constructed by the defendant in 1931 and was under his control on the date in question. For a distance of one hundred and ninety-five feet no fence had been erected along this part of the highway, although there was a regulation fence both north and south of the point where the plaintiff's car went off the road. Legal notice of the accident was given to the highway commissioner as required by statute.

The court by agreement of the parties, made a personal inspection of the premises. Evidence obtained by the court upon such inspection was properly taken into account in reaching the conclusion and making up the finding. *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000; *Forbes* v. *Orange,* 85 Conn. 255, 257, 82 Atl. 559; *Lunny* v. *Pepe,* 116 Conn. 684, 687, 165 Atl. 552; *Greenberg* v. *Waterbury,* 117 Conn. 67, 74, 167 Atl. 83. Manifestly we cannot review evidence thus obtained or know what part it played in the court's conclusions. *Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 Atl. 20.

The defendant assigns error as to certain of the facts contained in the foregoing general statement. One of these is that the road was slippery. That finding was fully supported by the specific admission of the assistant engineer of the highway department and by the statement of a policeman that the police were not permitted to ride there on motorcycles when the road was wet because it was dangerous. A study of the record evidence shows that while there were contradictory versions as to some features of the case, there was evidence which justified all the findings objected to. Other assignments relate to the failure of the court to find certain facts requested by a draft-finding. One

of these concerns a statement claimed by the defense to have been made to the police by the companions of the plaintiff later the same evening. This statement was to the effect that the plaintiff's car was side-swiped by another car overtaking and passing the plaintiff and thus caused to skid. On the stand each of these men flatly denied that they had ever made such a statement, and each testified that no car over-took and passed them, but that the lights of a car coming from the opposite direction were blinding, and that the plaintiff then applied his brakes to slow down the car and the skid followed. This presented a question of credibility for the trial court and we cannot of course disturb the conclusion. The defense also seeks to add to the finding a statement as to the marks said to have been made by the plaintiff's car and the distance it traveled before going over the embankment. It is quite apparent from the record of the testimony that these matters were the subject of dispute on the trial and the defendant's version cannot therefore be included in the finding.

A question of paramount importance presented by this appeal is well stated in the defendant's brief: "Was the defendant highway commissioner under a legal duty to maintain a highway fence under the circumstances and conditions of this case, or was the highway reasonably safe for travel in view of the purpose for which it was used?" The plaintiff relies upon General Statutes, §§ 1419 and 1481. The former provides that "the party bound to maintain any bridge or road shall erect and maintain a sufficient railing or fence on the side of such bridge, and of such parts of such road as are so made or raised above the adjoining ground as to be unsafe for travel; and whoever shall suffer damage in his person or property by reason of the want of any such railing or fence may

recover damages from such party." The pertinent provisions of the latter section are: that any person injured from the "neglect or default of the State or any
of its employees . . . by reason of the lack of any railing or fence on the . . . part of such road which may
be raised above the adjoining ground so as to be unsafe for travel, which railing or fence it shall be the
duty of the said highway commissioner to maintain,
. . . may bring a civil action to recover damages sustained thereby against the highway commissioner."

The plaintiff contended that that portion of the
highway where his car went off the road and down the
embankment was not reasonably safe and that it was
thus the duty of the highway commissioner to maintain a sufficient railing or fence there. The finding
shows that, at this point, the ground adjoining the
westerly edge of the highway slopes westerly eighty
to ninety feet to the Housatonic River, which lies between thirty and fifty feet below the level of the highway, and that at no point where the fence was lacking,
was there level ground between the westerly edge of
the roadway and the river, there being a downward
slope of varying degrees toward the river. Opposite
pole ♯ 127, the slope is gradual for certain distances
westerly and then drops abruptly. The distance from
the edge of the macadam to the slope also varies in
different portions, from twenty to thirty-eight feet.
At the point in question, the ground intervening between the westerly edge of the roadway and the top
of the abrupt slope, contained two trees about four
inches in diameter, a cluster of three smaller birch
trees, some brush and projecting rocks and is rugged
and irregular affording little traction, especially when
wet. The trial court reached the conclusion that the
road at this point was so raised above the adjoining
ground as to be unsafe for travel, and that it was there-

fore the duty of the highway commissioner to maintain a sufficient railing or fence along its westerly edge, and that the lack of such railing or fence was the proximate cause of the plaintiff's injuries.

The question of the safety of the road thus presented to the court, was one of fact. As such we may not disturb it unless the conclusion in itself is so unreasonable as to justify interference. It is true as the defense contends, that the commissioner is not an insurer that cars will not go off the highway, nor is he required by the statute to erect a fence at all points where a roadway is raised above the adjoining ground. It is only where the road is so raised as to render it "unsafe for travel" that such a barrier is required. The standard required is that of reasonable safety under the circumstances. *Dunn* v. *MacDonald,* 110 Conn. 68, 78, 147 Atl. 26. Moreover, it is not necessary to have expert evidence to determine the question, but the court can reach its own conclusion upon proof of the conditions or by personal observation or both. *Lunny* v. *Pepe,* 116 Conn. 684, 687, 165 Atl. 552; *Campbell* v. *New Haven,* 78 Conn. 394, 395, 62 Atl. 665. Though there was a considerable distance from the roadway to the edge of the slope where the abrupt drop existed, that does not as matter of law, nullify the conclusion that the roadway was unsafe for travel, but it is a circumstance of importance to be considered in determining the ultimate question of safety. *Horton* v. *MacDonald,* 105 Conn. 356, 361, 362. It is true in the present case as it was in that, that the danger to operators of cars on a dark night at this point, or in a fog or mist, or when blinded by approaching lights of another car, or the loss of control of the car from other causes on this crowned and slippery road, were probabilities properly to be taken account of in deciding whether the road was so unsafe

as to require a fence or railing. What additional evidence was acquired by the court's personal inspection, we have no means of knowing. Whatever our own reaction might have been upon the case as presented, the conclusion of the trial court that the road at this point was unsafe for travel was not so unreasonable that we are privileged to set it aside.

The defendant makes the point that there is no evidence to show that a sufficient fence would have prevented the plaintiff's car from going over the embankment. The purpose of the statute in requiring a sufficient fence was not to interpose an impregnable barrier but one to make the road reasonably safe. *Dunn* v. *MacDonald,* supra, p. 78. A sufficient fence within the intent of General Statutes, § 1419, is now defined by statute. General Statutes, Cum. Sup. 1933, § 399b. If such a sufficient fence had been erected, the liability of the defendant would not have arisen under the statutes relied upon by the plaintiff in this case, and it is not important to inquire what the consequences to the plaintiff would have been if the fence had been there. The trial court could legitimately take into account the fact that this car was a comparatively light car, a roadster, and was not driven at high speed; that its progress after beginning to skid was retarded for more or less of the distance by the application of the brakes; and that for part of the distance it was moving diagonally on soft and rough ground. The inspection of the premises enabled the court to see a sufficient fence to the north and south of the unfenced portion of the highway. With all the facts in evidence it was not unreasonable for the court to conclude that the lack of a sufficient fence was the proximate cause of the plaintiff's injuries.

The defendant contends that the evidence shows the plaintiff was guilty of contributory negligence. The

fact that he was blinded by the headlights of an on-coming car was one for which he could not properly be held responsible. His inability to see required the slowing up of his own car in the exercise of reasonable care; the use of the brakes was the natural and rea-sonable and apparently the only, means of doing so, and the lack of visibility could properly have been con-sidered a sufficient reason for not observing the slip-pery surface of the roadway at that point. It is ex-pressly found that the plaintiff "made every reasonable effort to maintain control of his automobile." It was not unreasonable for the court to reach the conclusion that the plaintiff acted the part of a reasonably pru-dent driver under the circumstances, and that the skid-ding of the car and its subsequent movements were not the result of his negligence.

The defendant further argued that the plaintiff was driving with two other young men on the seat with him and was thus violating General Statutes, Cum. Sup. 1933, § 427b, and therefore negligent. The statute provides that a car shall not be operated on a public highway "when the operator of such vehicle shall be crowded by reason of having more than the number of persons for which reasonable and safe seat-ing capacity is provided in the front seat thereof." The finding gives certain facts as to the size of these men and the width of the seat of the car, as well as the arrangement of the brake and other levers in the car, but there is no finding that the seating capacity was not sufficient to render it reasonably safe for these three young men to occupy the front seat. It was a question of fact for the court and we cannot say as matter of law that the findings show such seating to have been other than reasonably safe.

We cannot hold that there was error in the trial and decision of this case. The fact is pointed out,

however, in the defendant's brief, although not assigned as error, that the judgment-file includes an award of costs to the plaintiff. General Statutes, § 1481, provides that in actions of this character, no costs or judgment fee shall be taxed against the highway commissioner. The inclusion of costs in the judgment-file was apparently an oversight which can be corrected upon proper application therefor. *Sachs* v. *Feinn*, 121 Conn. 77, 88, note, 183 Atl. 384.

There is no error.

In this opinion the other judges concurred.