Bilheimer *v.* Bethlehem, Appellant.

Argued December 13, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

.

*Daniel L. McCarthy,* for appellant.

*Carleton T. Woodring,* with him *Dallas Dillinger, Jr.,* for appellee.

OPINION BY BALDRIGE, J., March 3, 1939:

The defendant has appealed from the judgment entered on a verdict for plaintiff in an action to recover damages for personal injuries sustained by falling into an excavation in a street of the defendant city.

The plaintiff, on January 3, 1936, when he was just past 74 years of age, resided on the west side of First Avenue, between Broad and North Streets, in the city of Bethlehem, his house being the second one north of Raspberry Street. On the morning in question, about 5:45 a. m., he left home intending to go to his work as a weighmaster at an artificial ice plant located at Third and New Streets. Instead of following his usual course by going south on First Avenue to Broad Street and then to his place of employment, he concluded, owing to the weather conditions, to go through his lot to Mitman Street, or alley, which is 20 feet wide and without sidewalks, and about 140 feet west of First Avenue. When he reached that street he turned southward, went about 40 feet to Raspberry Street, or alley, which is also 20 feet wide and without sidewalks. This route he was wont to follow when going to work in bad weather. When he entered Raspberry Street he turned east 3 or 4 feet, notwithstanding that Second Street where he intended to go was toward the west. There he fell into an excavation which had been made for the purpose of laying sewer pipe, which he claimed he could not see on account of the darkness, fog, rain and sleet, although he admitted his eyesight was normal. The excavation in the middle of Raspberry Street was not

continuous as portions thereof from 4 to 4½ feet long were tunnelled. These trenches were about 30 inches wide and approximately 8 feet deep and extended from First Avenue to within 40 feet of Second Avenue. They and the earth cast on the street made it impassable for traffic. It was therefore closed by barriers at First Avenue and also within a short distance of Second Avenue. Where Mitman joined Raspberry Street, earth 4 feet high was banked across the former for a distance of about 16 feet, leaving approximately 4 feet at the west side as a passage for workmen. In addition to these barriers, 3 terra cotta pipes stood on end, one at each end of Mitman Street and one in the middle. There were also some unlighted flares on the ground and nearby stood an air compressor about 6 feet long and 2½ or 3 feet wide and 15 large planks were roughly laid or piled along Raspberry Street covering a space about 10 or 11 feet wide, all of which clearly indicated that work was being done on that street. There were no lights at this intersection, but there were small street lamps at the corners of Raspberry Street and First and Second Avenues.

The plaintiff testified that he had not seen and had no knowledge of the existence of any obstructions or excavations and that he could not recall how the accident happened; nor could he remember climbing over an embankment. The witnesses called in his behalf testified that the excavations on Raspberry Street, the embankment on Mitman Street, and the barriers at First and Second Avenues had been there a month or six weeks. The one at First Avenue was within 40 to 60 feet of plaintiff's front porch. The trench at that point was bridged, so that the plaintiff on his way to work and other pedestrians could walk over it in passing along First Avenue. Plaintiff admitted he knew of work being done on First Avenue, but said he did not remember seeing the excavation across that portion used by pedestrians.

The plaintiff was found by two men, who had been attracted by his moaning and call for help, about 6:30 to a quarter of 7, which at that time of the year was an hour or more before sunrise. They testified that it was dark but they could see him lying at the bottom of the 8-foot trench.

The appellant contends that in no event was it negligent as the sewer was being constructed under the supervision of the Works Progress Administration, and, further, that plaintiff was guilty of contributory negligence.

It is unnecessary to discuss the first proposition advanced by the appellant as we think the testimony, viewed in its most favorable light for the plaintiff, which under the familiar rule we are bound to do, established that he was guilty of contributory negligence. It is futile to say that he was not acquainted with the exposed physical conditions that prevailed on this nearby street, not far from the corner which he passed almost daily. Furthermore, the plan offered in evidence showed that from the rear of his house plaintiff had an unobstructed view of a considerable portion of Raspberry Street, including the place where he met with his mishap, which, in a straight line, was not more than 70 feet distant. According to the testimony of his own witnesses, who speak for him, the darkness was not so dense as to prevent him from seeing the trench and obstructions if he had used his eyes.

We can but assume that plaintiff knew, or should have known, of the danger that confronted him; he must abide the consequences of taking a chance: *Jones v. Counties Gas & Electric Co.*, 289 Pa. 128, 137 A. 168. Even when one enters upon a public highway he is obliged to avoid patent obstructions or dangers: *Piro v. Shipley*, 33 Pa. Superior Ct. 278; *Culp v. Reading Transit & Light Co.*, 250 Pa. 164, 95 A. 391. The plaintiff's evidence clearly indicates that he either did not look where he was going or, if he did, assumed the risk

of an obvious danger; thus he is impaled on one or the other of the horns of a dilemma.

We have examined the cases cited by the appellee, but we do not regard them with their dissimilar facts as controlling. Guided by well-recognized, legal principles, which we conceive to be applicable to the incontestable facts before us, we are constrained to hold that the plaintiff failed to give heed to his own safety by exercising the precautions the law demands. Therefore, by reason of his contributory negligence, he is debarred from a recovery in this action.

Judgment is reversed and now entered for the defendant.