SEREGOS et al. v. C. W. GOOD, Inc.

No. 10521.

United States Court of Appeals
Third Circuit.

Argued Nov. 23, 1951.

Decided Jan. 7, 1952.

Howard R. Detweiler, Philadelphia, Pa. (Frank R. Ambler, Philadelphia, Pa., on the brief), for appellant.

Samuel J. Davidson, Hoboken, N. J. (A. Samuel Buchman, Philadelphia, Pa., Christopher G. Pappas, Hoboken, N. J., on the brief), for appellees.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is a negligence case. It grows out of an accident on a Pennsylvania state highway then under construction by the defendant, a Pennsylvania corporation engaged in road building for the state. The plaintiffs are New Yorkers who were motoring on the highway when their automobile collided with defendant's standing water tank truck. Diversity jurisdiction made the district court an appropriate forum for the litigation of plaintiffs' claims for damages. Plaintiffs won a jury verdict and judgment thereon. On this appeal, defendant asserts that the district court should have directed a verdict in its favor or, failing that, should have entered judgment n. o. v.

On the question of negligence, we examine the record and the controlling law of Pennsylvania to determine what duty the defendant owed the plaintiffs and what proof there was of a breach of that duty.

The circumstances, which defined defendant's duty to plaintiffs were not and are not in dispute. The Commonwealth of Pennsylvania had undertaken a major reconstruction and widening of a state highway designated as Route 611. For that purpose, during a period from May until December, the state closed to general traffic the section of the highway between Mt. Pocono and Tannersville. Only persons seeking access to abutting property were authorized to enter the closed section. Plaintiffs were through travellers, members of the general public as to whom the prohibition against travelling over this road was unqualified. The accident occurred on November 4, while the closed section was still under construction.

In these circumstances, the duty of the defendant road builder to the plaintiffs was accurately restricted and stated in the following excerpt from the charge of the district court to the jury: "If you find that the highway at the point of the accident was closed to through traffic by the posting of visible barricades, detour signs, lights or other warning, as required by law, then the plaintiffs were trespassers and the defendant was under no duty to warn them of the presence of its vehicle upon the highway." This is the rule of the Pennsylvania cases. Clamper v. City of Philadelphia, 1924, 279 Pa. 385, 124 A. 132; Cimino v. Laub, 1945, 157 Pa.Super. 371, 43 A.2d 446; accord, Fenske v. Kramp Construction Co., 1932, 207 Wis. 397, 241 N.W. 349. It follows that plaintiffs' collision with defendant's standing work vehicle could have involved a breach of duty owed to plaintiffs by defendant only if the highway lacked obstructions, markings and lighting such as would reasonably indicate to the travelling public the closure of the section along which plaintiffs elected to travel. This was a jury question if, but only if, the evidence left room for reasonable men to differ on the adequacy of posting. This is the critical point on this appeal. Therefore, we examine the evidence in detail.

The accident occurred at about 8 o'clock on a November night. A neighboring state police substation was notified almost immediately. State policeman Weber who responded to the call had to travel the very route taken by the plaintiffs in order to reach the scene of the accident. He testified that Route 611 was barricaded at its intersection with Route 615, a point about two miles before the scene of the accident was reached. According to the officer, a sign eight feet high and six feet wide stood

in the center of the highway at this point. It read, "Road Closed". Approximately six lighted gasoline flares were grouped around the sign and two lighted red lanterns were suspended on the sign, one on each side. In addition, the sign exhibited the word "Detour" and a marker pointing toward the intersecting Route 615. Moreover, from the sign to the margin of the highway on one side entry was precluded by a barricade of planks. On the other side there was room for an automobile to pass the sign.

Proceeding on Route 611 beyond this sign for about a mile toward the scene of the accident, the officer said the highway passed under a railway. Just beyond this underpass wooden horses extended across the highway with an opening in the center sufficient for the passage of an automobile. The horse on each side of the opening carried a sign reading "Road Closed—Keep Out" and was illuminated by a lighted bomb flare.

Still nearer to the scene of the accident the officer testified that he reached a point where the highway, theretofore two lanes in width, widened into four lanes. At that point the original two lanes were completely blocked by planks and a motorist could proceed only by veering to the left around these planks onto the two new lanes.

This detailed account and description was corroborated by witnesses Shumaker and Lewis, both state highway inspectors, and witness Kinney, a local taxicab driver; all, like Weber, disinterested witnesses. If the picture conveyed by this testimony is substantially accurate, there can be no doubt that the closure of the highway was plainly indicated to the night traveller.

On the other hand, no one testified that the signs and barricades did not exist, or that they were not illuminated or that they differed in any way from the foregoing description. However, each of the plaintiffs testified that he did not see any of the signs or obstructions. But beyond this plaintiffs also testified that they did not see the underpass near the scene of the accident and that they did not observe the change from a two lane to a four lane highway. Still further,

they testified that they were returning from Scranton, Pennsylvania to New York after having travelled from New York to Scranton earlier the same day. The driver, plaintiff Mallia, stated his belief that they had travelled highway 611 on the morning journey to Scranton, but whether they followed the detour or travelled the road under construction he was unable to say. In any event, he had not seen the signs described by the other witnesses during either the daylight journey or the return at night. Plaintiffs also testified that on the return journey there was fog at spots as they neared the scene of the accident. There was no other significant testimony concerning the posting of the closed section of highway.

■ It was the responsibility of plaintiffs to prove some neglect of duty by defendant. Describing this burden, the Supreme Court of Pennsylvania has said: "Those who sustain injuries and attempt to fasten upon others liability for these injuries must always bear in mind that burden of proof rests upon them. * * * A party attempting to fix liability on another has no right to have his evidence submitted to a jury if it is so inconclusive, i. e., so lacking in persuasiveness, that it fails to establish to an ordinary, reasonable mind the truth of the charge or claim made." Musleva v. Patton Clay Mfg. Co., 1940, 338 Pa. 249, 254, 12 A.2d 554, 557. To the same effect, see Mamic v. Pittsburgh & W. V. Ry. Co., 1941, 341 Pa. 486, 19 A.2d 404.

In their effort to discharge this responsibility, plaintiffs offered only their own testimony that they saw nothing; that they had not observed their route earlier in the day; that they had not observed any change from two lanes to four lanes; that they had not observed any underpass and that they had not observed any signs or barricades near the scene of the accident. In the circumstances of this case, we think this non-seeing of the plaintiffs did not afford a sufficient basis for a rational conclusion that the road was inadequately posted.

■■ The legal principles applicable to situations of this type have been considered

744

and stated repeatedly by the courts of Pennsylvania. In negligence cases, the Pennsylvania courts have had frequent occasion to decide whether the negative statement of the litigant that he did not observe something creates a jury question on the existence or occurrence of that something in the face of direct testimony of disinterested witnesses that the questioned thing existed or occurred. It is to be noted that where the witnesses, usually including disinterested persons, who have given negative testimony of non-observation, have been shown to have been alert and on the look out for the thing or occurrence in question, their failure to observe anything has been held to create a question for jury decision despite any positive testimony of the happening. Neuman v. Reading Co., 1925, 283 Pa. 416, 129 A. 450; Hoffman v. Pittsburgh & L. E. R. Co., 1923, 278 Pa. 246, 122 A. 274; Jerko v. Buffalo, R. & P. Ry. Co., 1923, 275 Pa. 459, 119 A. 543. But where the negative testimony is solely a statement of non-observation by an interested party who is not shown to have been particularly attentive the Pennsylvania courts say unequivocally that no jury issue is created in the face of affirmative testimony of disinterested witnesses that they did observe the questioned occurrence. Williams v. City of Pittsburgh, 1944, 349 Pa. 430, 37 A.2d 540; Ealy v. New York Cent. R. Co., 1939, 333 Pa. 471, 5 A.2d 110, Bodner v. Pennsylvania R. Co., 1947, 161 Pa.Super. 296, 54 A.2d 59; Newhard v. Pennsylvania Ry. Co., 1893, 153 Pa. 417, 26 A. 105, 19 L.R.A. 563; accord, Fraser v. State, 1920, 112 Misc. 19, 182 N.Y.S. 491. In these circumstances, any inference of non-existence from the stated failure to observe is deemed so weak as not to constitute proof upon which a verdict can stand.

We have just such a case here. We are satisfied that, measured by applicable principles of Pennslyvania law, plaintiffs' attempted showing of negligence was clearly insufficient to sustain a verdict in their favor. Defendant's motion for judgment n. o. v. should have been granted.

Accordingly, the judgment of the district court will be reversed.