W. A. SMITH and G. S. Smith, partners,
d/b/a Smith Brothers, Contractors,
Plaintiffs in Error,

v.

Linnie WILSON, Defendant in Error.

No. 37209.

Supreme Court of Oklahoma.

Feb. 4, 1958.

Rehearing Denied April 29, 1958.

Application for Leave to File Second Petition for Rehearing Denied May 20, 1958.

George E. Fisher, Rex H. Holden, J. A. O'Toole, Oklahoma City, for plaintiffs in error.

Wilson & Wilson, Pauls Valley, Looney, Watts, Looney & Nichols, Oklahoma City, for defendant in error.

CORN, Vice Chief Justice.

On January 11, 1954, plaintiff suffered accidental personal injuries of a serious and permanent nature. The accident occurred when an automobile in which she was riding, operated by her husband, skidded, rolled down an earthen fill and pinned plaintiff underneath the vehicle. The fill had been built to permit vehicular traffic on Highway 270 to cross the intersection of the road with a new road being constructed as a highway improvement project. The factual background of this appeal may be delineated in the following manner.

During 1953 the State Highway Department was improving Highway 270 in Latimer County, Oklahoma. The project involved raising the road level in certain places, relocation or straightening of the existing road, installation of new bridges and laying of rock bed, asphalt surface over the entire area. The improvements covered two contiguous sections, one within the city of Wilburton, the other approximately 4½ miles in an easterly direction. About 2.2 miles east of the city limits the old road curved in a northerly direction and intersected the new road, which was of greater elevation, in a south-west direction. To accommodate traffic on the old road it was necessary to construct a fill about 10 feet high leading up to the new roadbed. After crossing the intersection a dirt fill approximately 18 feet high led down to the old highway. Completion of the improvements was to be accomplished by different contractors, who undertook performance of separate phases of the construction under contracts with the State Highway Department.

On July 16, 1953, the State Highway Department, hereinafter referred to as the Department, contracted with defendant for the paving of 0.465 miles of highway within the city limits of Wilburton, under a contract designated SAP–1005(4), and also for paving of 4.484 miles of road east of the city under contract SAP–1005(5). These contracts, identical except for consideration expressed, in part provided:

"* * * furnish all tools, equipment, materials, and labor, and * * * build and complete Oklahoma State Aid Project No. SAP–1005(4) and SAP–1005(5) surfacing * * * in accordance with the Oklahoma plans on file with the Department of Highways at

Oklahoma City, Oklahoma * * * and with the Oklahoma Standard Specifications for Highway Construction * * * made a part hereof as fully as though copied in full herein * *."

The Contracts also provided for defendant

"* * * to begin work on the date designated by the Engineer, and to complete work within One Hundred * * * working days thereafter * * *."

Time was made the essence of the contracts, and failure to complete thereunder entailed payment of $20.00 per day as liquidated damages for delay in completion of the contracts.

The Oklahoma Standard Specifications for Highway Construction, which were made a part of these contracts by reference, in part provide:

"Barricades and Warning Signs. The contractor shall, before closing or in any way tearing up an existing road, furnish and erect approved barricades to protect the traveling public and the work. The barricades shall be placed across the road at such locations that they may be seen for at least three hundred (300) feet. They shall be painted white or whitewash shall be renewed as often as necessary to keep the barricades thoroughly covered.

"From sunset to sunrise the Contractor shall furnish and maintain at least one light at each barricade.

"The Contractor shall also furnish and maintain one red light as a warning sign to be furnished and placed a prescribed distance ahead of each barricade."

And, a further provision of the Specifications, and which is a part of all Department contracts, placed a seasonal limitation upon laying asphalt paving within the period from October 31st to May 1st.

In October, 1953, and while the grading contractor was engaged in performance, it was ascertained that a water line within the Wilburton city limits would have to be lowered to enable the grading contractor to install a concrete drain above the water line. After consultation with the Department's resident engineer it was agreed that lowering the waterline was within defendant's contract, and defendant's superintendent made plans to do this work, although defendant had not contemplated performance of any work under the contracts at that time.

Before work could be commenced under any contract an authorization, commonly referred to as a work order, had to be issued by the Department. On October 22, 1953 the Department's Construction Engineer addressed a letter to defendant which stated, in part:

"You are hereby authorized to commence construction not later than November 5, 1953 for the improvement of State Aid Project SAP–1005(4) Surf. Consisting of 0.465 Mi. Stab. Aggr. Base and Bld. Rock Asph. Crse. in Wilburton."

This letter also mentioned conditions under which such authorization was issued, including the contract requirement that the work be completed within 100 days, and advised defendant the project was under the direct supervision of the resident engineer. An identical letter relating to the 4.-484 miles of road extending east of Wilburton, covered by contract SAP–1005(5) was sent defendant at the same time. On the same date the following letter, a copy of which was sent defendant, was written to the resident engineer.

"Mr. T. R. Livesay   October 22, 1953
Mr. Jno J. Stobaugh, Jr.
SAP–1005(4) and (5), surfacing
Latimer County

"The work order on the above captioned project is being issued this date in order that the utilities in the vicinity of Wilburton can be moved to their permanent locations and the Grading Contractor can complete his work.

"Upon completion of this work in the vicinity of Wilburton, you will

suspend all operations until completion of the Grading Contract.

"/s/ Jno J. Stobaugh, Jr.
Construction Engineer."

Defendant commenced work on November 5th and completed moving of the water line on November 16th. The resident engineer's diary, or work report, disclosed completion of the work on November 16th, and a notation "Time suspended, due to seasonal conditions within the contract." Upon completion of this job defendant was released, moved out all equipment, and thereafter did not return to either of the areas under contract until after the date of the accident. The work on the water lines was done to accommodate the grading contractor, who was enabled to complete the grading, secure final inspection and be released from further responsibility on November 29, 1953. Defendant never entered upon the area east of Wilburton, where the accident occurred until March, 1954. After the grading contractor was released from responsibility the Department maintained the old highway and the crossings and erected signs and barricades until March, 1954. Neither defendant, nor any contractor connected with these projects, erected or maintained any barricades or warning devices. About March 29, 1954 defendant moved into the area in order to do some work preliminary to the actual paving.

■ The accident in which plaintiff was injured occurred, as noted heretofore, on the night of January 11, 1954. This action was brought to recover damages resulting from the accidental injury upon the theory defendant had neglected and failed to discharge the common law duty to protect plaintiff, as a member of the traveling public, from dangerous conditions which existed. The basis of the rule, which fastens liability upon a highway contractor for injury to persons lawfully using the highway, is that the duty to protect the traveling public from danger does not arise from contract but out of the legal duty not to permit the highway to become dangerous

for ordinary purposes. The rule is generally recognized and applied. See generally 27 Am.Jur., Indpt. Contractors, Sec. 52; 40 C.J.S. Highways § 262; 65 C.J.S. Negligence § 95. One of the latest applications of the rule of liability for injury to third persons may be observed in Briscoe v. Worley, 208 Okl. 60, 253 P.2d 145.

Both parties recognize the rule, but it is the matter of validity of its application to the present case which gives rise to the decisive question to be considered. During the trial, and now on appeal, defendant's position is that no liability can attach for the reason that defendant never had assumed control of the area of the road when the accident occurred, and so cannot be charged with failure to exercise reasonable care (in not erecting barricades and warnings) because under no legal duty to perform such acts.

Opposed to this position, plaintiff contends the evidence conclusively established defendant's violation of a primary duty to warn and protect plaintiff from danger, and that such failure constituted actionable negligence.

Summarized, the argument is that the contract is the measure of the contractor's duty, and although the project was covered by two contracts, in reality performance thereunder was to be as a whole; when defendant took control of the area (to move the water lines) this constituted assumption of control of the entire road project sufficient to establish joint liability with the grading contractor; upon discharge and release of the grading contractor defendant's legal duty to perform under the contract continued, uninterruptedly by the order for suspension of the work, and affixed upon defendant a non-delegable duty which could be discharged only upon final completion of the contract. Thus plaintiff concludes that the issue of liability, in relation to control of the area and the duty to warn of hazards, properly was submitted to the jury and the verdict, based upon competent evidence and reasonable inferences to be drawn therefrom, must be sustained under

the accepted rule that such a verdict will not be disturbed on appeal.

It does not appear that we have considered such a situation as is presented herein. We are cited to no decision involving liability of an independent contractor to third persons wherein the basic question is whether what might be denominated as *contractual control* provided sufficient grounds for affixing legal responsibility in tort.

■ That defendant was an independent contractor is unquestioned. It is elementary that an independent contractor's responsibility for acts, or omissions, which are the proximate cause of injury to third persons, evolves from authority or control over the thing or agency as to which a failure to act in respect thereto is charged.

■ The matter of control is a basic feature of the relationship. Any legal duty defendant might be found to owe arose by virtue of contract, and no responsibility arose until defendant assumed control thereunder, since execution of the contracts created no obligation other than to discharge the contracts according to the terms and conditions specified. Hence no responsibility for alleged violation of a legal duty can fasten upon defendant unless the fact defendant did perform work under contract SAP–1005(4) be determined, as a matter of law, to have established the defendant's control of the project area covered by contract SAP–1005(5).

The petition charged that the place of the accident was under defendant's control at all times and that under contract (5) defendant was bound to comply with the requirements of the Standard Specifications for Highway Construction; that the failure to comply therewith violated a legal duty which constituted actionable negligence. Whether this was pleading of the ultimate fact, or merely allegation of a conclusion of law is of no particular consequence. The sole evidentiary fact, relating to the question of whether defendant assumed control of the area of the entire project, is found in the circumstance of the work performed during November, 1953 in the area covered by contract (4). Since it is admitted defendant never was in the work area of contract (5) prior to March, 1954, there exists no evidentiary facts which provide any basis for deduction or presumption of the ultimate fact or conclusion.

■ The inquiry thus is reduced to consideration of the obligation and responsibilities assumed by defendant upon execution of the contracts. At this point it may be noted that plaintiff's argument that, although there were two contracts, the common practicalities of the situation require that both be considered as one and the responsibilities thereunder assessed upon the basis appears unsound. Numerous reasons destroying the force of this argument appear immediately. Such contracts are let to bidders in fractional segments in order for the Department to obtain the most advantageous contracts. Completion under one contract would not depend upon the other, either as to time required for performance, or acceptance of the work as a single project after inspection, since one contract could be completed, accepted and paid for under the contract, whereas a contract covering a contiguous area could be incomplete, and subject to the liquidated damage provision for failure to complete within time, or could be found unacceptable upon final inspection. To be considered as a single contract, although covered by separately executed instruments, the working days charged against one portion of the road necessarily would be deducted from the working time allotted to the remainder. No such intention appears to have been within contemplation of the parties when executing the contracts.

■ No reason appears for issuance of separate work orders on October 22, 1953. It is undisputed that the only work to be done involved moving of the water lines within the area of contract (4), in order to accommodate the grading contractor. Except for the work defendant performed after the oral amendment of contract (4), it was impossible for defendant to take

control of the areas covered by both the contracts, for two reasons. First, on the date work orders were issued by the Department neither the grading contractor nor the bridge contractor had completed their own contracts. Second, under the terms of the contracts defendant was precluded from attempting to carry out the work because asphalt paving could not be laid within the seasonal period expressly excepted under the contracts.

Neither is it a persuasive circumstance that the work orders as issued directed defendant, upon completion of the work within contract (4), to suspend all operations until completion of the grading contracts. If accepted as controlling, such argument simply would result in allowing the Department sole and entire discretion in determining which contractor should bear the legal responsibility for a particular project, above and beyond the terms of the written contract which supposedly defined the entire extent of the obligation contracted to be performed.

Although regrettable that plaintiff received accidental personal injuries, it is not within the province of this court to pronounce rules of law to protect against each and every unfortunate occurrence. The nature, time and circumstances of the accident combined to require that defendant be looked to as the only possible responsible party. The exigencies of the situation are not sufficient to support a legal responsibility. The reasoning by which it is sought to place defendant in control of the work area where the accident occurred is without evidentiary support. If carried to extremes this would only mean that a similar factual situation could equally as well support the claim of legal responsibility for injuries occurring at a distantly removed, non-contiguous area which had remained under control of another contractor until at or near the time of the accident. The extremes of the illogical reasoning required to arrive at the conclusion that a legal duty to the traveling public devolved upon defendant as respected contract (5) because of performance of work in the contiguous area, and at a time when the projects were under the control of others are apparent.

We are of the opinion that as a matter of law defendant could not be said to have had control of the area where plaintiff was injured as to give rise to a duty to protect third persons. The trial court erred in overruling defendant's demurrer to the evidence and the motion for directed verdict.

The judgment accordingly is reversed and the cause remanded with directions to set aside the judgment rendered upon the jury's verdict and to render judgment for defendant.

DAVISON, HALLEY, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

WELCH, C. J., and BLACKBIRD, J., concur in result.

CARLILE, J., dissents.