Helen **FERGUSON** and Dave Ferguson,
Plaintiffs,

v.

**BEN M. HOGAN COMPANY**, Defendant.

**No. HS–69–C–18.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Dec. 23, 1969.

**660**

Osro Cobb, Little Rock, Ark., and Henry W. Woods, Little Rock, Ark., for plaintiffs.

Wood, Smith & Schnipper, Hot Springs, Ark., for defendant.

## OPINION

JOHN E. MILLER,* Senior District Judge.

This is an action by which plaintiffs, Helen and Dave Ferguson, husband and wife, seek damages from the defendant, Ben M. Hogan Company, for injuries sustained by Helen Ferguson when she fell while crossing Central Avenue in Hot Springs, Arkansas, on February 19, 1969.

Plainitffs alleged that defendant created a dangerous and hazardous condition in a street extending into the crosswalk plaintiffs attempted to use and that defendant negligently failed to protect or warn plaintiffs of the danger, as required by the common law and by the provisions of the contract between defendant and the Arkansas Highway Department.

Defendant denied that it was negligent and specifically alleged that Mrs. Ferguson was negligent in failing to perceive the obvious, in crossing the street in too rapid a manner, in failing to observe warning signals, failing to cross in a controlled area, and otherwise failing to exercise ordinary care for her own safety.

The plaintiffs are citizens and residents of Michigan. The defendant is a corporation organized and existing under the laws of the State of Arkansas. The amount involved is in excess of $10,000, exclusive of interest and costs.

The substantive law of Arkansas is applicable to the issues before the court. The case was tried to the court without a jury. The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a), Fed.R.Civ.P.

Plaintiffs were regular patrons of the race track at Hot Springs, Arkansas,

* Sitting by designation.

during the racing season. They arrived in Hot Springs on February 15, 1969, and checked in at the Anthony Motel, which is located several blocks north of the race track on the east side of Central Avenue. On the day of the accident plaintiffs walked south on Central Avenue to the race track, attended seven races, and walked back to their motel room before sunset. They were aware, as a result of walking to the races and driving on Central Avenue, that resurfacing was in progress or incomplete on Central Avenue. Shortly after they reached their motel room, plaintiffs decided to eat their evening meal at the Royal Vista Restaurant, located on the west side of Central Avenue approximately 200 feet southwest of the Anthony Motel. It is undisputed that resurfacing was completed at the crosswalk in front of the Royal Vista Inn, and plaintiffs crossed without difficulty. Upon arriving at the restaurant, Mrs. Ferguson decided that she preferred the Blue Bell Restaurant, also located on the west side of Central Avenue several hundred feet north of the Royal Vista Inn. Plaintiffs then walked to the Blue Bell and found that it was crowded to the extent that immediate service could not be obtained. They then abandoned the prospect of eating at a restaurant and walked south on the sidewalk on the west side of Central, intending to return to their motel room, which was equipped with a kitchenette. Laser Street enters Central Avenue from the east but does not extend westward beyond Central. The Anthony Motel is located on the southeast corner of the intersection. Plaintiffs looked in both directions for traffic, and then proceeded eastward in the south crosswalk to reach their motel. They were approximately midway across Central in the crosswalk when Mrs. Ferguson stumbled and fell, sustaining injury to her right shoulder and knee, a facial laceration and a broken nose.

The defendant, Ben M. Hogan Company, had contracted with the Arkansas State Highway Department to resurface a lengthy portion of Central Avenue. It appears that it is standard procedure among highway contractors to stagger the length of the asphalt strips while resurfacing is in progress in order to permit the flow of traffic to continue and to insure proper union of the edges. This procedure was followed by defendant in its work on Central Avenue, with the result that only the east half of the south crosswalk at the intersection of Central and Laser was resurfaced at the time Mrs. Ferguson fell. The resurfaced portion of the street was approximately 2½ inches higher than the older pavement, and it may be reasonably inferred that Mrs. Ferguson tripped or stumbled on the elevated asphalt, although neither plaintiff testified positively that such was the case. Defendant discontinued laying asphalt from December 21, 1968, to April 7, 1969, in deference to weather conditions and seasonal limitations imposed by the Arkansas Highway Department. There were, however, no warning signs or protective devices in close proximity to the intersection of Central and Laser.

The contract between defendant and the Arkansas State Highway Department provides in part as follows:

"7.1 The Contractor shall provide safeguards, safety devices and protective equipment and take any other needed actions on his own responsibility or as the engineer may determine, reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract."

"7.9 The Contractor shall provide, erect, and maintain all necessary barricades, suitable and sufficient lights, danger signals, and other signs, provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and safety of the public * * *. Suitable warning signs, illuminated at night by lanterns or flares, shall be provided to mark the places where surfacing ends

or is not compacted. All lights for this purpose shall be kept burning from sunset to sunrise.

"The Contractor shall erect warning signs in advance of any place on the project where operations interfere with the use of the road by traffic, and at all intermediate points where the new work crosses or coincides with an existing road."

There is a split of authority as to whether provisions in a public contract as to care to be exercised or precautions to be taken for protection of third persons may be relied upon in an action for damages by a third person against a public contractor.[1] Many well-reasoned decisions hold that liability does not depend on contract but arises out of a legal duty devolving on a contractor not to obstruct or make the highway dangerous for ordinary use under the circumstances. Joshmer v. Fred Weber Contractors, Inc. (Mo.App.1956), 294 S.W. 2d 576; Briscoe v. Worley (1952), 208 Okl. 60, 253 P.2d 145; Smith v. Wilson (Okl.1958), 325 P.2d 421; Kehm v. Dilts (1936), 222 Iowa 826, 270 N.W. 388; Toler v. Hawkins (1940), 188 Okl. 58, 105 P.2d 1041. This view has been held to be especially persuasive in cases of "nonfeasance" as opposed to "misfeasance." McClendon v. T. L. James & Co. (5 Cir. 1956), 231 F.2d 802, and see generally Prosser On Torts, § 99 (3d Ed. 1964).

█ Arkansas, however, has apparently adopted the proposition that the duty of a public contractor to exercise ordinary care for the safety of the traveling public may arise from and be defined by *both* the common law and the provisions of a highway contract. Ho-gan v. Hill (1958), 229 Ark. 758, 318 S.W.2d 580; Hill v. Whitney (1948), 213 Ark. 368, 210 S.W.2d 800. Stated simply, a highway contractor, by entering into a contract with a public authority, places himself in such a relation toward the traveling public, that the law imposes upon him the duty to exercise reasonable care to act in such manner that the traveling public will not be injured. This approach is logically sound, as while it may be doubted that members of the traveling public actively rely on the public contract, the contractor is engaging in an affirmative course of conduct for his own economic benefit which may affect public safety, and injury to those who come in contact with his finished or unfinished work is certainly to be anticipated if it is negligently done. This view is also supportable regarding "nonfeasance" as the public authority may be expected to rely on the contractor who breaches his contract by doing nothing at all, and such reliance may be expected to endanger members of the traveling public by preventing the public authority from taking precautions for their protection.

██ It is well settled that, apart from the provisions of a public contract, a legal duty rests on a public highway contractor to exercise reasonable care for the safety of members of the general public while they travel over a road on which he is working, which duty is nondelegable. Schwarcz v. Charlton County (1955), 211 Ga. 923, 89 S.E.2d 881; Bressingham v. City of New York (Sup., 1949), 138 N.Y.S.2d 57, aff'd 286 App. Div. 811, 143 N.Y.S.2d 621; Brinkley v. Gallahar (1962), 50 Tenn.App. 129, 359 S.W.2d 857; Strakos v. Gehring (Tex. 1962), 360 S.W.2d 787, reversing Gehr-

1. Some authorities hold that such provisions are not available to third persons. See Wymer-Harris Constr. Co. v. Glass (1930), 122 Ohio St. 398, 171 N.E. 857, 69 A.L.R. 517; Lydecker v. Board of Chosen Freeholders of Passaic County (1918), 91 N.J.L. 622, 103 A. 251, L.R.A. 1918D, 351; Davis v. Mellen (1919), 55 Utah 9, 182 P. 920, 7 A.L.R. 1193; Annot., 69 A.L.R. 522. Other authorities hold that such provisions are available to a member of the public. See Hayes v. Michigan Central R. Co. (1884), 111 U.S. 228, 4 S.Ct. 369, 28 L.Ed. 410; Phinney v. Boston Elevated R. Co. (1909), 201 Mass. 286, 87 N.E. 490; Annot., 69 A.L.R. 522.

ing v. Strakos, Tex.Civ.App., 345 S.W. 2d 764, on other grounds. Accordingly, the contractor who fails to guard, or maintain proper barriers, lights, or other warning signals, at unsafe places near the work of construction or repair of a highway may be held liable for injuries resulting therefrom. Seregos v. C. W. Good, Inc. (3 Cir. 1952), 193 F.2d 741; Breedon v. White (1945), 62 Ariz. 256, 156 P.2d 904; Holland v. Phillips (1956), 94 Ga.App. 361, 94 S.E.2d 503; O'Brien v. Musfeldt (1951), 345 Ill.App. 12, 102 N.E.2d 173; State Contracting & Stone Co. v. Fulkerson (Ky.1956), 288 S.W.2d 43; Eidson v. Dean Const. Co. (Mo.App.1950), 233 S.W.2d 820, 825; Carson v. Dobson Bros. Const. Co. (1967), 181 Neb. 287, 147 N.W.2d 797; C. C. T. Equipment Co. v. Hertz Corp. (1962), 256 N.C. 277, 123 S.E.2d 802; Moore v. Geiger (1966), 6 Ohio App.2d 14, 215 N.E.2d 607; Foster & Creighton Co. v. Hale (1949), 32 Tenn.App. 208, 222 S.W.2d 222, 225; Jarbet Co. v. Moore (Tex.Civ.App.1965), 397 S.W.2d 268, err. ref., no rev. err. The liability exists even though the contractor acted without negligence in *creating* the dangerous condition. Joshmer v. Fred Weber Contractors, Inc., supra; Shupe v. Antelope County (1953), 157 Neb. 374, 59 N.W.2d 710; Page v. Scaramozi (Tex. Civ.App. 1956), 288 S.W.2d 909, err. ref., no rev. err.

Any device utilized must be reasonably sufficient to protect or warn travelers on the highway, in the exercise of reasonable care. Doby v. W. L. Florence Const. Co. (1944), 71 Ga.App. 888, 32 S.E.2d 527; Reeves v. State (La.App. 1955), 80 So.2d 206, reh. den. 228 La. 653, 83 So.2d 889, aff'd 232 La. 116, 94 So.2d 1; Morales v. New York State Thruway Authority (1958), 47 Misc.2d 153, 262 N.Y.S.2d 173; Moore v. Geiger, supra; Walsh v. City of Pittsburgh (1954), 379 Pa. 229, 108 A.2d 769; Com., Dept. of Highways v. Higdon (Ky. 1964), 383 S.W.2d 331; Albright v. MacDonald (1936), 121 Conn. 88, 183 A. 389.

The evidence presented clearly demonstrates that, whether the duty is defined by the contract or by the common law, the defendant, Ben M. Hogan Company, was negligent in failing to take steps to protect or warn pedestrians of the hazard it created on Central Avenue. While an elevation of 2½ inches in a crosswalk on a public street is hardly an insurmountable obstacle, it is clearly a dangerous condition. The argument of the defendant that it is the custom of highway contractors in Arkansas to leave unfinished strips of asphalt in a rough and uneven condition without employing safety or protective devices is specious. An industry cannot be permitted to establish its own uncontrolled standard by adopting careless methods to save time, effort or money. See Prosser On Torts, § 33 (3d Ed. 1964), note 63 and cases there cited. In addition, it is conceded that defendant was aware that Central Avenue is subject to unusually heavy automobile traffic during the racing season, which demands considerable attention from pedestrians attempting to cross the street. Defendant was also aware of the crosswalks on the north and south ends of the intersection, as its construction superintendent on the job admitted seeing the warning stripes in the crosswalks being painted by the State Highway Department prior to the beginning of the racing season.

Defendant, however, insists that it had no responsibility, at least under the contract with the Highway Department, to take steps to make the crosswalk safe, as the area falls within the category of a "temporary crossing." Section 4.6 of the contract provides:

"The contractor will not be held responsible for the building and maintenance of *temporary crossings* unless such crossings are noted in special provisions as part of the contract, ordered as extra work by the engineer, or shown on the plans." (Emphasis supplied.)

Completely aside from the doubtful question whether "building and maintenance" was intended to include reasonable safety precautions, the evidence is overwhelming that the crosswalk in question was permanent in character and had been in existence for over eighteen years at the time plaintiffs attempted to use it. It seems clear, however, that even if there had been no designated crosswalk, the mere existence of the intersection should have suggested to defendant that pedestrians might attempt to cross there.

█ Finally, the argument of defendant that the work on Central Avenue at the Laser Street intersection was completed work and had become the responsibility of the State Highway Department is wholly without merit. It is undisputed that only two adjoining strips of base coat asphalt had been laid in the south crosswalk, and three strips of base coat remained to be laid in order to reach the west curb of Central Avenue. In addition, there is absolutely no evidence in the record that any of the work had been accepted by the Arkansas State Highway Commission, as required by the contract.

█ It should be noted that the court, in reaching its conclusion as to the negligence of defendant, did not take into consideration evidence of another prior fall in the same crosswalk or that the defendant took steps to remedy the hazard after plaintiff's accident. It is, of course, quite well settled that evidence of precautionary measures, alterations or a change of conditions subsequent to an accident is inadmissible, at least to the extent that it is offered to establish prior negligence. Johns v. Pomtree, Adm'r (1966), 240 Ark. 234, 398 S.W.2d 674; cf. St. Louis Southwestern Ry. Co. v. Jackson, Adm'r, (1967), 242 Ark. 858, 416 S.W.2d 273. This rule of exclusion, followed in almost all courts, is logically sound, whether based upon a policy of encouraging preventive improvements or on the ground that such evidence is immaterial and irrelevant. On the other hand, evidence of prior accidents occurring under conditions substantially similar to those of the occurrence under consideration is admissible for the purpose of demonstrating the existence of a hazardous condition and notice thereof to the defendant. St. Louis Southwestern Ry. Co. v. Jackson, Adm'r, supra. However, the evidence offered of a prior fall by one J. M. Reynolds in the instant case was without a proper foundation. Helen Ferguson fell at dusk during a period of heavy traffic, and it is conceded that there were no warning or safety devices present. J. M. Reynolds fell shortly before noon during normal traffic conditions and does not recall the presence or absence of precautionary devices. In addition, there is absolutely no evidence that any officer or employee of defendant received notice of falls in the crosswalk in question prior to notification by plaintiffs' attorney in connection with the present action.

█ Mrs. Ferguson was also guilty of negligence which contributed to cause her injuries and plaintiffs' resulting damages. It is the general rule that pedestrians are required to exercise ordinary care for their own safety. Williamson v. Garrigus (1958), 228 Ark. 705, 310 S.W.2d 8; Jackson's Adm'r v. Rose (1931), 239 Ky. 754, 40 S.W.2d 343; City of Birmingham v. Andrews, (1937), 27 Ala.App. 377, 172 So. 681. A traveler is contributorily negligent when he is injured by a defect which is open and obvious, Hill v. Way (1933), 117 Conn. 359, 168 A. 1; Bamburg v. Standard Oil Co. of Louisiana, (La.App.1940), 199 So. 411; Bilheimer v. City of Bethlehem (1939), 135 Pa.Super. 1, 4 A.2d 564, unless he did not see it and was not negligent in not seeing it.

█ While travelers are not compelled to abandon the use of a street or highway because of general knowledge that it is under repair, St. Louis, I. M. & S. Ry. Co. v. Wells (1912), 102 Ark. 257, 143 S.W. 1069, those who possess such knowledge are required to exercise that degree of care which a prudent man would exercise in view of the danger.

Cloutier v. City of Owosso (1955), 343 Mich. 238, 72 N.W.2d 46, 62 A.L.R.2d 389. Plaintiffs were aware that construction was incomplete or in progress along Central Avenue. The accident occurred as night was approaching, and Mrs. Ferguson is advanced in years. Under the circumstances, it was incumbent upon her to give some attention to a hazard of which she was generally aware. Photographs of the south crosswalk, taken and introduced by plaintiffs as exhibits numbers 1, 2 and 3 reveal that the elevated asphalt was easily distinguishable from the older pavement by its color, was open and obvious, and would have been readily apparent to Mrs. Ferguson had she glanced at the pavement as she crossed. Unfortunately, as plaintiffs candidly admitted at trial, neither of them ever looked at the street prior to the moment Mrs. Ferguson fell.

Having found that the defendant was guilty of negligence which was a proximate cause of the injuries received and damages sustained by plaintiffs, and also that plaintiffs were guilty of negligence which was a proximate cause of the injuries and damages, it becomes the duty of the court under the statutory law of Arkansas to determine the degree of negligence of the parties.

Ark.Stat.Ann., § 27–1730.1 (1962 Repl.), provides:

"Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage."

Section 27–1730.2 provides that in all actions for negligence resulting in personal injuries, contributory negligence shall not prevent recovery where any negligence of the person injured "is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

The court finds that Helen Ferguson was guilty of 40 percent and the defendant, Ben M. Hogan Company, was guilty of 60 percent of the negligence which proximately caused the injuries and damages of Mrs. Ferguson. The cause of action of Dave Ferguson is derivative in nature and he can have no better standing in court than is vested in his wife. Accordingly, his damages must be reduced in proportion to his wife's negligence. Nelson v. Busby, (1969), 246 Ark. 243, 437 S.W.2d 799.

On the date of the accident Mrs. Ferguson was 70 years old with a life expectancy of 10 years. Apparently she had enjoyed unusually good health for many years.

After the fall, Mrs. Ferguson was aided to her room in the motel by her husband and other persons who appeared on the scene. Dr. T. Henry Dembinski was called and found Mrs. Ferguson in a state of shock. He advised that she go to a hospital, but Mrs. Ferguson refused to go because she was afraid her husband was on the verge of a stroke.

As a result of the fall Mrs. Ferguson sustained an injury to her right shoulder and right knee, a facial laceration, and a possible nondisplaced fracture of the nose. She suffered considerable pain and was treated by Dr. Dembinski for three to four weeks after the fall.

The plaintiffs began attending the races again on Saturday, February 22, the third day following the accident, but they did not stay through all the races. After leaving Hot Springs sometime about March 20, they returned to Detroit where they remained until the Kentucky Derby in May, when they drove from Detroit to Louisville, Kentucky, and attended the races there for three days. Then they drove back to Detroit. They subsequently attended the races in Detroit on approximately one-half of the days of the racing season.

Mrs. Ferguson did not appear to be nervous while testifying but she complained of high blood pressure which she did not have prior to the accident.

Between February 20 and March 20, 1969, Dr. Dembinski visited her at her motel room 27 times. He saw her at the races in Louisville, Kentucky, on May 1 to 3, 1969. The plaintiffs returned to Hot Springs on three different occasions to obtain follow-up medical care from Dr. Dembinski.

On November 3, 1969, Mrs. Ferguson was examined by Dr. DuBose Murray, an orthopedic surgeon of Hot Springs, who testified that Mrs. Ferguson was an alert and cooperative patient; that there was a well-healed laceration below the right eye; that the nose was normal and she was able to breath through both nostrils. An examination of the right arm revealed that she was able to make a fist satisfactorily and had no intrinsic weakness in the hand. She had developed a very marked capsulitis or frozen shoulder of the right dominant arm. She was suffering pain in the right shoulder and her motion was limited 10 to 15 percent largely because of the pain. In the opinion of Dr. Murray the disability to the right arm at that time was 25 percent, and he was of the opinion that unless an active course of physical therapy over a period of perhaps six to twelve months is instituted, the 25 percent disability in the arm might well become permanent. There was no atrophy of the right knee or any permanent disability of the nose or the knee.

The court is of the opinion that her total damages for the pain and suffering already endured and probable future pain and the disability to her right shoulder amount to $10,000.

The plaintiff Dave Ferguson on the day of the accident was 79 years old with a life expectancy of six years. He has suffered for several years from high blood pressure, and been treated by Dr. Dembinski at various times. He has been retired for several years and has no steady employment execpt he stated that he was a "developer of things." No further questions were asked him about his development "of things."

Since the accident he has paid Dr. Dembinski $455.00 for professional fees; $30.00 for new glasses for Mrs. Ferguson to replace those broken at the time of the fall; and $37.00 for X-rays, making a total of $522.00. He claims that he should recover $900.00 for three trips from Detroit to Hot Springs for further examination of Mrs. Ferguson by Dr. Dembinski, but the court does not believe that he is entitled to recover for those trips, since there was nothing about the condition of Mrs. Ferguson that required the special services of Dr. Dembinski.

He has lost to a degree the services, society and companionship of the marriage relationship with his wife, and this has been compounded by a scarcity of suitable domestic help in Detroit. He will be required to pay, if the advice of the examining physician is followed, for the physical therapy approximately the sum of $3,200.00, together with other incidentals.

The court is of the opinion that Dave Ferguson has sustained total damages in the amount of $522.00 for medical expenses, $400.00 for incidentals, $3,200.00 for physical therapy expenses, and $1,000.00 for his loss of consortium, or a total of $5,122.00.

Therefore, judgment for plaintiff is being entered today on the complaint of Helen Ferguson in the amount of $6,000.00 and costs, and for plaintiff on the complaint of Dave Ferguson in the amount of $3,073.20, and costs.